Torry *v.* Bowen.

[CAYUGA GENERAL TERM, June 6, 1853. *Selden, T. R. Strong* and *Johnson,* Justices.]

————•·•·•————

TORRY, *appellant, vs.* BOWEN and others, *respondents.*

The declaration required by the statute to be made by a testator, at the time of subscribing his will in the presence of the witnesses, that the same is his last will and testament, need not be in the exact words of the statute. Words equivalent in import and signification, or acts and words together, which amount to a clear and unequivocal declaration by the testator of his intention to execute the instrument, as his last will and testament, are sufficient.

It must appear by the proof before the surrogate, not only that the testator knew that the instrument he was subscribing purported to be his will, but that he intended to give the attesting witnesses to understand, also, that it was his last will and testament, and that he was subscribing, or had sub-scribed, it as such.

Torry *v.* Bowen.

The provision of the statute, requiring the testator to declare the instrument to be his last will and testament, is satisfied if it appears from the testimony that the subscribing witnesses knew at the time they subscribed the instrument, from communications made to them by the testator, or other persons in his presence and acting in the matter for him, that the instrument was the testator's last will and testament, and was executed by him as such.

Thus, where the testator requested the witnesses to see him write his name, and they looked over his shoulder and saw him subscribe the instrument; the testator pointing with his finger to his signature and seal, and declaring that to be his hand and seal, for the uses and purposes therein written or expressed ; and on being asked by a person present, who had drawn the will at the testator's request, and was one of the executors named therein, if he wished the witnesses to witness the instrument, he replied that he did ; and thereupon such person, in the testator's presence, read to the witnesses the attestation clause, and they subscribed the instrument as witnesses ; *Held*, a valid execution of the will.

APPEAL from a decree of the surrogate of the county of Seneca. The facts of the case sufficiently appear in the opinion of the court.

*J. R. Richardson*, for the appellant.

*D. Herron*, for the respondents.

*By the Court*, JOHNSON, J.   The surrogate held that the proof, before him, did not show the will offered for probate to have been executed and attested in the manner prescribed by statute.   It does not appear from the decree in what particular the surrogate held the execution and attestation to have been defective.   It is claimed here, by the respondent's counsel, that it was not properly published and declared by the testator to be his last will and testament, at the time of making his subscription, in the presence of the witnesses.

It is agreed, and so are the cases, that this declaration need not be in the exact words of the statute ; but that words equivalent in import and signification, or acts and words together, which amount to a clear and unequivocal declaration by the testator of his intention to execute the instrument as his last will and testament, are sufficient. (*Remsen* v. *Brinckerhoff*, 26 *Wend.* 325.   *Rutherford* v. *Rutherford*, 1 *Denio*, 33.

VOL. XV.        39

*Whitbeck* v. *Patterson,* 10 *Barb.* 608.) It must appear by the proof before the surrogate, not only that the testator knew that the instrument he was subscribing purported to be his will, but that he intended to give the witnesses attesting to understand, also, that it was his last will and testament, and that he was subscribing, or had subscribed, it as such.

Now that the testator in the present case, knew the instrument he was subscribing to be his will, cannot be doubted, it seems to me, for a moment. The will was drawn by Doctor Folwell, at the request of the testator, the same day it was executed and bears date, and was carefully read over to him by Folwell. The testator then took it and read it over himself, and requested Folwell to sign it as a witness. On Folwell's declining to do so, on the ground that he was named as an executor, and suggesting to the testator to wait till evening, when some of the neighbors would be in, the testator expressed the wish that it should be executed before Folwell left, and wished to have some persons sent for immediately, to come and sign as witnesses. One of the subscribing witnesses, Bainbridge, happened to come to the house during this conversation, and was immediately sent for the other witness, Van Tuyl. He was requested to go for Van Tuyl, for this purpose, either by the testator or by Folwell, in his presence. Van Tuyl came in a short time, and the testator proceeded immediately to sign the instrument; and got up from his bed and walked across the room, some twenty feet, to the stand, for the purpose. He then requested the witnesses to see him write his name, and they both looked over his shoulder and saw him subscribe the instrument. He then pointed with his finger to his signature and seal, and declared that to be his hand and seal for the uses and purposes therein written or expressed. He was then asked by Folwell if he wished these two persons to witness the instrument, and he replied that he did. Folwell then asked him to explain the instrument to the witnesses; and he replied, "the instrument explains itself," and stepped away from the table ; but did not leave the room. Folwell then took the will and read to the witnesses, as he testifies, in an audible voice, the

Torry v. Bowen.

attesting clause. The witnesses then, in the presence of the testator, subscribed the instrument as witnesses; and Folwell folded it, filed it, and delivered it to the testator. This is the substance of the testimony of Folwell, and it is not contradicted in any substantial particular. It is true that the subscribing witness Van Tuyl, testifies that he does not recollect whether Folwell read the attesting clause or not; but he admits that he pointed it out to him, the witness, with his finger, so that he, the witness, read it, or enough of it to understand that it was the attesting clause usually attached to wills. He says the testator did not say expressly that the instrument was his will; and the word will was not mentioned at the time the instrument was subscribed by the testator, or the witnesses, unless Folwell read the attesting clause, which he does not recollect. But he testifies to one fact, which is also testified to by Folwell, that when he came in, Folwell told him, in the presence of the testator, that the testator was opposed to long wills, and he had therefore selected a short form from the book for him. In short, it is perfectly apparent from the testimony of this witness that he knew at the time he subscribed the instrument as a witness, from communications made to him by the testator, or others in his presence, and acting in the matter for him, that the instrument was the testator's last will and testament, and was executed by him as such.

The other subscribing witness, Bainbridge, was only sixteen years of age and had never subscribed any such instrument as a witness, before. He recollects less of what took place than Van Tuyl, but does not contradict Folwell in any thing, or Van Tuyl. He does not remember Folwell reading the attestation clause, or even pointing it out. He thinks Folwell requested him to stand by and see the testator sign, but does not recollect who asked him to subscribe as a witness. The substance of what he recollects is, that he saw the testator subscribe the instrument and was requested to look on and see it done; that he saw Van Tuyl subscribe; that he subscribed himself, and heard the testator say it was "for the purposes herein contained."

The want of recollection, or even of a full and perfect un-

derstanding, in a subscribing witness, can never operate to defeat a will, where the statute has been substantially complied with by the testator. The question is, what did the testator say and do on the occasion, and not whether the witnesses entirely comprehended at the time every minute particular, or now accurately recollects all that took place. If enough was done to inform them substantially, that is sufficient, where it is apparent that the testator himself acted understandingly. Nor is it necessary that the testator should make every declaration, and do every act himself. If others speak and act for him, in his presence and with his assent, in such a manner that the court can see that the testator sanctioned or adopted such acts and declarations as his, that is enough, provided they come up fully to the requisitions of the statute. Now suppose in this case the testator, after signing, himself, and requesting the witnesses to sign the instrument as witnesses, and declaring that that was his hand and seal, for the uses and purposes therein mentioned, and saying that the instrument explained itself, as is clearly proved, had, in addition, read to the subscribing witnesses the attesting clause, or pointed it out to them and saw them read it, could any one doubt that that would have been a sufficient declaration and publication of the instrument as a will?

In *Remsen* v. *Brinkerhoof*, it is said by Verplanck, senator, that if the testatrix had shown the attestation clause "to the witnesses or had it read by another person, and assented to it, that would have been a declaration making known her will to the witnesses." And it was precisely because nothing of the kind was done, nothing to indicate to the subscribing witnesses that the testatrix knew what instrument she was signing, that the will was held invalid in that case. The same rule in substance was laid down by the chief justice, in his opinion in that case, and by the chancellor in *Chaffee* v. *Baptist Missionary Convention,* (10 *Paige,* 85.) This case is clearly distinguishable from each of the cases cited and relied upon by the respondents' counsel. Here the attestation clause was read to the subscribing witnesses by Folwell, or pointed out to them so that they might read it, after the testator had subscribed it, declaring at

Torry *v.* Bowen.

the same time, that he did so for the uses and purposes therein expressed, and that the instrument explained itself, and before they subscribed their names as witnesses. Folwell had drawn the will at the request of the testator, had read it to him, and remained to see it properly executed, at his urgent solicitation. We can see clearly that Folwell was acting for the testator and with his approbation and assent, so that his acts and declarations in reference to the nature of the instrument are to be regarded and taken as those of the testator himself. All the witnesses agree that the testator was at the time of sound mind, and that every thing which was said and done was in his presence and hearing. There is nothing to show or indicate that he was not attending to what passed, or that he did not fully understand and comprehend it. On the contrary, the whole evidence tends most strongly and irresistibly to the conclusion that he knew the instrument he was subscribing at the time was a will, and that he intended to do all that was necessary to make it a valid will in law, and fully understood and assented to all that was done in the premises by Folwell.

The substantial requisites of the statute were in my judgment fully complied with, so that there is no room for doubt or mistake.

To hold the contrary, in a case like this, would be to sacrifice substance and sense to a mere form of words. Had the testator used the exact phraseology of the statute, on the occasion, he could not have expressed or communicated his intentions more clearly or effectually than he did by his language and acts, and those of others in his behalf.

In my opinion the case is clear, as a question of law, and the will should have been admitted to probate. The decree of the surrogate must therefore be reversed, with costs of the appeal.

[CAYUGA GENERAL TERM, June 6, 1853. *Selden, T. R. Strong* and *Johnson,* Justices.]