SIMON SIMMONS and DANIEL FISHER, *appellants, vs.* PETER SIMMONS and others, *respondents.*

A will which makes a full disposition of all the testator's property is inconsistent with the valid existence of any prior will, and therefore amounts to a revocation of all wills previously executed.

THIS was an appeal from the decree of the surrogate of the county of Albany, admitting to probate a paper purporting to be the last will and testament of Peter Simmons, late

of the town of New Scotland, deceased. The appellants are heirs at law and next of kin of the deceased, who died possessed of real and personal property amounting in value to $20,000 or $25,000. Peter Simmons left at his death three testamentary papers, all duly executed and disposing of his property. The first was dated September 14th, 1852 ; the second in April, 1855 ; and the third on the 16th day of July, 1855 ; in each of which Peter Simmons, jun. and Tunis Houghtaling were named as executors. Neither of the last two in terms revoked former wills. In the month of April, 1855, S. Van Santvoord wrote a second will for the testator, and it was duly executed and published. In July, after the execution of the will propounded for probate, Van Santvoord, alone and not in the presence of the testator or any one else, burnt up the will of April, 1855. The surrogate, by his decree, admitted the will last executed, (July 16, 1855,) to probate as the will of the testator, and from that decree the appeal was taken to this court.

*John H. Reynolds,* for the appellants. I. The testator having executed at different times three testamentary papers, the last two of which having no clause in terms revoking former wills, neither of the prior wills were revoked, except so far as the provisions of those last executed were inconsistent with those prior in point of date and execution, and all three of the testamentary papers, taken together, constitute the last will and testament of the deceased, and one of them cannot be admitted to probate without the others ; they must all be admitted, or none. (1.) The execution of a subsequent will, without an express clause of revocation, does not revoke a prior will, except so far as the provisions of the last are inconsistent with the former. (2 *R. S.* 246, § 35, 4th ed. *Nelson* v. *McGiffert,* 3 *Barb. Ch.* 164. *Brant* v. *Wilson,* 8 *Cowen,* 56. *Dayton's Surrogate,* 124, 2d ed. and cases cited.) (2.) All three of the wills shown to have been executed by the testator, taken together, constitute the last will and testament of the deceased.

Simmons *v.* Simmons.

(*Campbell* v. *Logan,* 2 *Bradford,* 90. *Dayton's Surrogate,* 125, 2*d ed.*) (3.) Subsequent wills not in terms revoking former wills have the same effect as codicils, and taken all together amount to a last will and testament. · (4.) The surrogate's court has no authority to admit to probate a part of a last will and testament and issue letters thereon. The whole will must be admitted, or no part of it. There can be but one last will, and that is an entire thing. The term "will," includes every thing necessary to make it complete. (*Dayton's Surrogate,* 45, 2*d ed.* 2 *R. S.* 68, §§ 71, 78.)

II. The destruction by Van Santvoord of the will of April, 1855, did not operate to revoke, cancel or destroy it. The statute was not complied with. (2 *R. S.* 64, § 35, 4*th ed.;* 246, § 42. *Dayton's Surrogate,* 127, 2*d ed.*) (1.) It hence follows, that this paper is a part of the testator's last will and testament, and must be established before any part of the will can take effect, or letters testamentary be granted. (2.) And a part of the will being destroyed, the surrogate has no jurisdiction to take proof of it. It must be proved in the supreme court. (2 *R. S.* 253, § 84, 2*d ed.*) (3.) The surrogate cannot take proof of part of a will, and the supreme court of another part; as there is but one last will, it must be proved in one court as an entire thing, and not in different courts by installments. (4.) When the several testamentary papers, constituting the last will of the testator, are proved in the court competent to establish it, it will be construed according to its legal effect and executed. It is the business of the surrogate to establish the testamentary character of the paper, leaving the legal effect to be determined by the supreme court, if any question shall arise thereon.

*John K. Porter,* for the respondents. I. The objection that the will was preceded by other wills unrevoked, cannot be urged on appeal, not being embraced in the allegations filed by the contestants in the court below.

II. The instrument produced, being upon its face a perfect

will, made by a competent testator, and proved to have been duly executed, and unrevoked, the surrogate was bound to admit it to probate ; and if the contestants desire to limit and qualify its effect by any former wills, they must produce and prove them. (2 *R. S.* 58, § 14.) (1.) Whether there were or were not prior wills in force, this will at all events was unrevoked, and the claimants under it were entitled, on compliance with the conditions of the statute, to have the evidence of their rights under it recorded. (2.) The surrogate had no right to reject it without proof that the will propounded was no longer in force. (3.) The burden is upon the contestants to propound for probate any prior will which they suppose to enlarge or qualify the operation of the last testamentary act of the testator. (4.) The probate of this will in no manner concludes the contestants from propounding other wills, and if they should be admitted to probate, it would be the duty of the surrogate to modify the decree accordingly. (*Campbell* v. *Logan*, 2 *Bradf.* 90, 94.) (5.) But until such wills were propounded the surrogate had no jurisdiction, except to decide whether this will was duly executed by a competent testator, and unrevoked at his death.

III. The former wills were not in force at the death of the testator, but were entirely superseded by his last will. (1.) The will of July, 1855, was perfect and complete in itself and withdrew the entire estate, real as well as personal, from the operation of all previous wills. The testator in this will made certain specific devises and bequests, and after enumerating these *excluded all others*, by giving the entire residue of his real and personal property to his legal heirs, *pro rata.* The will provides only, and that in terms, for the payment of " the legacies herein specified." (2.) He had an unquestionable right to supersede the former wills, and revoke and alter them throughout, by executing a new will declaring such revocation or alteration ; and this he did in a most unmistakeable form. (2 *R. S.* 64, § 42.) The statute does not exact a revocation, in terms, of former wills, but requires the testator to make

Simmons *v.* Simmons.

known, by will or other writing duly executed, the revocation or alteration, as the case may be. He is not required by the statute to declare the fact that he has made former wills, and then repudiate them, but to declare his will that they shall remain no longer in force, which he may do effectually by withdrawing his property from their operation, and excluding claimants under them, by a new disposition of what was previously given to them. This, like the other kindred provisions of the statute of wills, looks to substance and not to form, and so the courts have uniformly held on questions arising under that statute. (*Torry* v. *Bowen,* 15 *Barb.* 304. *Brown* v. *De Selding,* 4 *Sandf. S. C. R.* 10. *Remsen* v. *Brinckerhoff,* 26 *Wend.* 332. *Tonnele* v. *Hall,* 4 *Comst.* 140.) By publishing a new and independent will, *inconsistent* with those which preceded it, he publishes and declares his revocation of all previous wills. (*Nelson* v. *McGiffert,* 3 *Barb. Ch.* 158. 15 *Eng. Law and Eq. R.* 283 ; 60 *Eng. Com. Law. Honfrey* v. *Honfrey,* 4 *Moore,* 29 ; 6 *Jurist,* 355, *S. C.* 4 *Kent,* 528.) A subsequent will does not revoke a former one unless it contains a clause of revocation, or is inconsistent with it. (3 *Barb. Ch.* 158, 164.) A second will is a revocation of a former one, provided it contains words expressly revoking it, or makes a different or incompatible disposition of the property. (4 *Kent,* 528.) This will stands, and was designed to stand, alone. The intent expressed is, to give nothing to either of the beneficiaries, (and they are identical in all the wills,) except what is specifically provided in the last will. The rule that when the inconsistency is only in respect to particular clauses, it works merely a revocation *pro tanto,* applies only where there are provisions in the first will which may be superadded to those of the last, consistently with the apparent intent of the testator. But when, as in this case, the testator exhausts the entire property, and makes a new partition throughout between the beneficiaries, the inconsistency is not between jarring clauses, but between entire and independent schemes of distribution. That the first two wills are in their general scope

Simmons *v.* Simmons.

wholly incompatible with the last, and that the three cannot stand together except as three incongruous wills, is apparent from the foregoing comparison of their provisions in the statement. (3.) The intent of entire revocation and substitution is evinced not only by a comparison of the three instruments, but by the language of the testator in his last will, whether construed with or without reference to the antecedent and surrounding circumstances. He not only dictated, executed and acknowledged it as his last will and testament, but he made a new disposition of all he had to give, and provided without exception for every claimant on his bounty. He was aware of the distinction between a codicil and a new will, and preferred to make a new will. The changes in each case were material, and required a revision of the entire will, and an apportionment upon a new basis. In each, he weighed anew the claims of his respective heirs, and the successive changes were, for satisfactory reasons, generally stated by him at the time, and when not stated, obvious from the surrounding circumstances. His acts assumed a revocation of the prior wills. He wished Van Santvoord to put the first out of the way when he deposited the substituted will with the magistrate. On the execution of the *last* will, the second was burnt, and by the direction of the testator. (*See Betts* v. *Jackson*, 6 *Wend.* 173.)

*By the Court,* GOULD, J. The due execution of what purports to be Peter Simmons' last will and testament, on the 14th day of July, 1855, is sufficiently proved. On that point the parties before us agree. They also agree that in April 1855, Peter Simmons duly made and executed *a* last will and testament; which in July, 1855, (soon after the execution of the will first named, and on the same day,) was destroyed by the testator's direction, but not in his presence; he being in an adjoining room. The contents of this will are not proved. A will duly executed by the same testator, dated September 14th, 1852, is also admitted in evidence; which purports to

dispose of the testator's whole property. The will of July 14th, 1855, after giving sundry legacies, and making some specific devises, divides in equal shares among his "legal heirs, nine in number, *the residue of his real and personal estate;* and then provides that its legacies are to be paid "out of bonds and notes in his possession, and any real estate not herein disposed of;" that is, not *specifically* disposed of.

The respondents claim that the will of July, 1855, was properly admitted to probate, by the surrogate of Albany county; and that his decree, so admitting it, should be affirmed. The appellants claim that the *three* testamentary instruments, *together,* constitute *the will;* and must all stand as *one will.* And, since that of April, 1855, confessedly, cannot be proved in detail, that *there is a whole will incapable of proof;* hence the testator is to be pronounced intestate; and the surrogate's decree must be reversed.

The argument before us proceeded upon the assumption that the revised statutes (2 *R. S. 4th ed.* 246, § 35,) had so entirely *altered* the law, in respect to the revocation of wills, that the English cases, and our own older decisions, are inapplicable. This is an entire mistake. The section referred to says "no will in writing," (except, &c., to which *exception* special attention will be hereinafter called,) "nor any part thereof shall be revoked, or altered, otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation," &c. The revised laws of 1813 (1 *R. L.* 365, § 3,) say "no such last will and testament duly executed, &c. or any part thereof, shall be revocable, or be altered, otherwise than by some other will or codicil in writing, or other writing of the party to such last will and testament, declaring the same," &c. The marginal reference of the revisers is to the English statute 29th Charles 2d, ch. 3, § 6; which 6th section is, "no *devise* in writing, &c. or any clause thereof, shall be revocable otherwise than by some other will or codicil in writing, or other writing declaring the same," &c. (*Wilson,* 515.) So that the English cases, and all cases in our

Simmons *v.* Simmons.

own courts, have been decided on the revocations of wills, under the same statute that we now have. And the whole doctrine of *constructive revocations* has grown up under a prescribed rule as strict as the one that now governs us; and that doctrine is the doctrine of our common law, as well as that of the revised statutes.

It should be observed that, between a codicil and a subsequent will, there is this difference of construction; a codicil is a republication and ratification of so much of the prior will as it does not revoke; whereas a new will, (if it provides for a full disposition of all the testator's estate,) though inconsistent but *in part* with the former will, and absolutely agreeing in part, revokes the whole prior will, by substituting a new and last disposition for the former one; since it must revoke in part, (so far as inconsistent;) and it were merely idle to continue the former one in force for those parts which are fully carried into effect by the new one. (*Powell on Dev.* 543, 4. *Vesey,* 187.) Note, also, 3 *Wilson,* 515, and the same case reversed, 2 *Bl. Rep.* 937; which although deciding—where the new will was not produced and its contents were not known—that merely a "different disposition" (where that phrase, so limited, was found by special verdict) by a new will would not absolutely revoke a former will, (produced and proved;) yet plainly shows that, had the new will been produced, and its provisions even but in respect to the part of the property in question been shown to be inconsistent with the former one, it would have been held a revocation. The common sense of it seems to be clearly stated (though but in the argument) in 3 *Wilson,* 506: "It is certain no man can die with two wills;" (*i. e.* two wills as to the same subject matter, as in the case before us, each disposing of his whole property;) "the last must prevail."

The statute of Charles 2d (as quoted) would seem to show that our present statute has been, to some extent, misunderstood. For while "some other will or codicil in writing" does, by the more apparent reading of the statute itself, as well as

by the whole current of English decisions upon that statute, always work a revocation where its provisions are inconsistent with the former will; if the revocation is to be by some writing other than a will or codicil, it must be by "other writing declaring the same." The "declaring" (as necessary to revocation) applies to the "other writing" only, and not to the other will, &c.; although a revoking clause may be, and frequently *is,* inserted in a will or codicil, "from abundant caution."

Let us now refer to the *exception* in the revised statutes, of which a word has been said, in passing; (2 *R. S. 4th ed,* 246, § 35,) "no will in writing except in the cases hereinafter mentioned." Then immediately follow ten consecutive sections, with provisions as to total and partial revocations; and then follows the 46th section, (*p.* 248,) as to reviving a revoked will: "If, after the making of any will, the testator shall duly make and execute a second will, the destruction, canceling, or revocation of such second will,"(*a*) "shall not revive the first will, unless it appears by the terms of such revocation, that it was his intention to revive, and give effect to his first will;" or, unless he then republish the first. Here, by legislative and simultaneous construction, a second will "duly made and executed," (without any clause declaring the former one revoked,) is shown to have put the first so utterly out of vital existence, that it needs either republication (tantamount to an entirely new execution) or an express revivor by the terms of the writing revoking the second. Whether this section be considered as the last of the excepted cases (of § 35,) or as a new and substantive construction of section 35, its effect is the same. And here the revisers did alter our law and the English. And a consideration of the English rule, as

(*a*) The revisers here manifestly use the word "will" (unqualified) as *ex vi termini* meaning a complete disposition of the testator's whole property, and therefore any second one is necessarily a revocation of any former will. Observe, also, in contradistinction, that the English statute speaks of revoking a *devise,* not necessarily a *will.*

Simmons *v.* Simmons.

by their decisions, (their statute having no such provision,) shows the view, taken above, of this latter section, is the true one. For while, in England, if a former will were (in law) revoked by a subsequent one, on the ground of inconsistency alone, an express revocation of the latter (or its proper canceling, or destruction,) *ipso facto* revived the former, if it remained in existence; (*Perkins*, § 479; 4 *Burr.* 2512; *Powell on Dev.* 549;) still, if the second in terms expressly revoked the first, a revocation or destruction of the second did not revive the first. By the independent substantive act of express revocation, the first became immediately void, even though it remained in existence. (*Powell on Dev.* 551. *Doug.* 40. *Cowp.* 53. *See also* 2 *Dallas*, 266; 3 *Conn.* 576.) The *dictum* in *Cowper*, 92, by Lord Mansfield, in a case where the point did not arise, cannot prevail against his own decision. (*Cowp.* 53.)

Further, our own courts, since the revised statutes, plainly hold, in regard to the whole matter of wills and their execution, that the *substance* of the testator's *intention*—if manifested by such acts as the law recognizes—is to govern, in preference to any *formal* or *literal* following of the words of the statutes. (*See* 26 *Wend.* 332; 3 *Barb. Ch.* 164; 15 *Barb.* 304; 4 *Comst.* 145.)

In view of these principles, both of plain statute construction, (§ 46, as above,) and of reiterated decisions on just such a statute as ours, I am unable to see how the will of July, 1855, which clearly provides for a full disposition of all the testator's property, can be held otherwise than inconsistent with even the valid existence of any prior will. I think the surrogate's decree should be affirmed.

Judgment affirmed.

[ALBANY GENERAL TERM, December 7, 1857. *W. B. Wright, Harris* and *Gould*, Justices.]