NICHOLAS LUDLUM as Executor, etc., of BENJAMIN B. LUDLUM, Appellant, v. ADELIA L. OTIS as heir-at-law and next of kin, and as Administrator with the will annexed of BENJAMIN B. LUDLUM, Deceased, Respondent.

*Will—when revoked by a subsequent one—Meaning of "natural heirs"—Incorporation of unexecuted paper in will.*

A testator in 1869 executed, in the city of New York, a will, whereby he devised his interest in a house and lot in said city to two cousins. In April 30th, 1875, at Nyon, in Switzerland, he executed, in accordance with the laws of this State, a second will whereby, after giving certain legacies to his servant, he devised the remainder of his property all situated or invested in America, to his natural heirs. The second will did not in express terms revoke the first; *held,* that the first will being inconsistent therewith, was revoked by the second.

The testator left him surviving, a mother, a sister and cousins, but no widow or children; *held,* that by the term his "natural heirs" the testator meant his mother and sister.

When a reference in a will to an unexecuted paper is not sufficient to incorporate the same into such will.

Appeal from a decree of the surrogate of New York admitting to probate a will propounded by respondent, and refusing probate to one offered by appellant. Probate of the will first executed by the testator was refused on the ground that it was revoked by a later one executed April 30th, 1875, at Nyon, in Switzerland. The latter will was in French.

By it, according to the respondent's translation, the testator gave certain legacies to his servant, and by article third, as to the remainder of his property, all situated or invested in America, the testator declares that such property is, in consequence of an arrangement, to go to his natural heirs (*heritiers naturels*). Under these circumstances he declares that he constitutes them his heirs; he consequently declares that these heirs shall take the property situated in America.

The words "*qu ensuite d'arrangement ces biens doivent revenir a ses heritiers naturels*," in the first clause of this article third, were translated by the appellants "that in consequence of dispositions made, such property is to go to his natural heirs," and by the respondent as is given above.

April 17th, 1874, the testator executed what purported to be a codicil to his will of 1869, but the same was invalid, because not attested by any witness. By this, after giving certain legacies, he devised "all the rest, residue, and remainder of my estate, both real, personal and mixed," to the two cousins to whom the real estate was devised by the first will.

*Nash & Holt*, for the appellant.

*Coudert Brothers*, for the respondent.

Potter, J.:

This is an appeal from the decree of the surrogate of the city and county of New York, refusing to probate a will and testament made by Benjamin B. Ludlum, dated October 18, 1869, upon the ground that the same had been revoked by a subsequent will made by the said Ludlum, at Nyon, in Switzerland, April 30, 1875, and admitting the latter will to probate instead of the former.

It is conceded that the former will was duly executed, and was

propounded by the appellant as executor thereof. The respondent, who is the sister of the testator, opposes the probate of the first will, and propounds the second will for probate, under which she claims as devisee all his estate situated in New York. The testator left him surviving only his sister, respondent, and his mother, the latter of whom died before the will was propounded. The first will having been duly executed, these questions are presented upon this appeal, viz.: Was the will of April, 1875, executed in Nyon, Switzerland, properly executed to devise real estate situated in New York? Did such will revoke the former will of October, 1869, executed in New York? Is the respondent the devisee under the second will?

The manner and circumstances attending the execution of the second will are substantially these: The testator sent for Gabriel Dufone, a notary, residing at Nyon, with whom he was acquainted, to draw his will. There were present with the testator and the notary two other persons, who were also acquainted with the testator and the notary, and who were sent for by the testator to witness the will. In their presence the testator stated to the notary that he wished him to draw his will, and that he had sent to him and the witnesses to come for that purpose. He gave the instructions and dictated the will to the notary in presence of the witnesses, who heard the instructions, and the will was drawn by the notary in their presence, and the testator signed it in their presence after it had been read to him. The testator requested one of the witnesses to witness it in presence of the notary and of the other witness, and the other witness was requested by the notary to witness it in the presence of the testator, and the other witness, and both the witnesses signed it, and also the notary, and all the signatures were made in the presence of the four persons named. We think these acts and declarations constitute an execution of the will according to the laws of the State of New York, where the property devised was situated. (*Brinckerhoff* v. *Remsen*, 8 Paige, 488; *Gilbert* v. *Knox*, 52 N. Y., 125; *Campbell* v. *Logan*, 2 Bradf., 98; *Moore* v. *Moore*, 2 Bradf., 265; *Thompson* v. *Stevens*, 62 N. Y., 634; *Peck* v. *Cary*, 27 id., 9.)

No question or suggestion is made that the second will was not a valid bequest of the personal estate of the testator. This

will, therefore, disposed of all the known property which belonged to the testator. Did this will revoke the former will?

A will which makes a full disposition of all the testator's property is inconsistent with the existence of any prior will, and therefore amounts to a revocation of all wills previously executed. (*Simmons* v. *Simmons*, 26 Barb., 68.) And so a second will containing provisions inconsistent with a former will revokes the former will in respect of the inconsistent portion. (*Brant* v. *Wilson*, 8 Cow., 56; *Nelson* v. *McGiffet*, 3 Barb. Chy., 158; 2 R. S., tit. 1, chap. 6, § 48 [original page, 65].) So effectual is the revocation by a subsequent will, that the making and destroying of a second will, or revocation by subsequent will, will not revive the first will, unless it appear by the terms of such revocation that it was the intention of the testator to revive and give effect to his first will, or unless the first will be duly republished. (2 R. S., § 53 [original page, 66]). We must conclude, therefore, that the first will was revoked by the second. This brings us to the consideration of the question, what disposition did the testator make of his property, situated in New York, by means of the second will? The structure and language of the will itself are singularly inexplicit. Instead of naming the devisees, as is easy and usual, and as he did in his first will and attempted codicil, he devises the property to so indefinite a devisee as his natural heirs "*heritiers naturels,*" and refers to some former arrangement or disposition, and to increase the difficulty and uncertainty in this regard, the second will is expressed in the French language, and the translators differ in their translations of it.

It is contended upon the part of the appellant, with a good degree of plausibility and force, that the third article of the will, which disposes of the New York property as the remainder of his estate, refers to a former arrangement or disposition of that property in such a manner as to make that arrangement or disposition a part of the second will, and that the devisees designated by that instrument are the testator's cousins John and Robert Ludlum, and who are also mentioned by name as the devisees of a part of his estate under the first will. It is conceded that this paper, though purporting to be a codicil to the first will, is so defectively executed as to be invalid as a will. This codicil purports to dis-

pose of all the testator's property, and the devisees and legatees therein are mentioned by name. Is this codicil so referred to in the last will as to constitute a part of it?

The rule upon this subject, as derived from the cases, will be found in 1 Redfield on Wills, 261, as follows: That if a testator in his will refers expressly to any paper already written, and has so described it that there can be no doubt of the identity, that paper, whether executed or not, makes part of the will; but there must be no reasonable question of the identity of the paper and of its existence at the date of the will. (*Habergham* v. *Vincent*, 2 Ves. Jr., 204, 228; *Dillon* v. *Harris*, 4 Bligh, [N. S.], 329; *Thompson* v. *Quimby*, 2 Brad., 458.) In *Smart* v. *Prujean* (6 Ves., 519), the rule is stated thus: The properly attested instrument, in order to have a paper incorporated into it, must describe it so as to be a manifestation of what paper is meant, in such a way that the court can be under no mistake.

It is the contents of a paper that may be incorporated into a well executed will. The third article of this Nyon will does not in terms refer to a paper; it is simply an arrangement or disposition which may or may not be expressed in a paper. It may refer to the codicil by which the testator attempted to give his property to his cousins, or it may refer to a verbal arrangement, disposition or understanding which reconciled the testator with his mother and sister, and induced him to change the objects of his bounty. If it had been meant to refer to the codicil, it was both easy and natural to have named the codicil by its date, by whom, when, and where made, and with whom deposited, as the testator did in this codicil to his first will. If it referred to an unwritten arrangement, understanding or reconciliation between him and his mother and sister, the reference to it would necessarily be indefinite. It was obviously some arrangement or disposition by which he gave, or by which he was induced to give his New York property to his natural heirs. Who were his natural heirs? We should say, to a man reared and educated in New York, the term natural heirs, would be understood and regarded as a mother and sister, rather than cousins in any degree. We must conclude that the reference to some arrangement or disposition is too doubtful and unsatisfactory to allow of the incorporation of the paper.

called a codicil into the last or Nyon will. It results from these views that the devise of the New York property is to his mother and sister as his natural heirs, or that the devisees are so indefinite as to invalidate it as a devise to any one; and in that case the property descends to the mother and sister, and after the death of the mother to the sister alone.

The decree should be affirmed, with costs to both appellant and respondent, to be paid out of the estate.

INGALLS, P. J., and DANIELS, J., concurred.

Decree affirmed, costs of appellant and respondent to be paid out of the fund.