In the Matter of the Probate of the Will of ROBERT PULVERMACHER, Deceased. ISIDORE PECH et al., Appellants; PHYLLIS ALTMAN et al., Respondents.

First Department, October 14, 1952.

*H. I. Harris* of counsel (*Samuel L. Zuckerman,* attorney), for Isidore Pech, appellant.

*Irving M. Maron* of counsel (*Edward B. Schulkind,* attorney), for Helen Marcin, also known as Helen Marczin, appellant.

*Abraham Zemlock* for Esther Feinberg, respondent.

*Bertram H. Siegeltuch* of counsel (*Walter M. Weisberg,* attorney), for Phyllis Altman and Morton Raskin, respondents.

VAN VOORHIS, J. The question upon this appeal is whether a paper, entirely in the handwriting of Robert Pulvermacher, deceased, should be admitted to probate as a testamentary instrument. He had previously executed a more formal will. The paper now offered for probate was not prepared by a lawyer, and is addressed " To My Executors of My last Will & Testament & To Whom it May Concern ". It contains no general revocation clause, and was probably intended to operate as a codicil to his previous will, although that question is not now presented. There is no dispute that decedent intended this document to operate as a testamentary disposition of a portion of his property, that he subscribed it in the presence of two persons whom he requested to act as attesting witnesses, nor that they signed as witnesses in his presence and in the presence of each other. This occurred in the safe deposit room of a bank where testator had a box and where the witnesses were employed.

The sole objection on which this paper has been denied probate is that it was not published, viz., that decedent neglected to comply with subdivision 3 of section 21 of the Decedent Estate Law in failing to declare to the attesting witnesses that the instrument thus subscribed was his last will and testament.

Regardless of whether it was necessary to establish publication prior to the enactment of the statute of wills, where the instrument is proved to have been intended by the testator to be a will (a point not definitely settled), the statute now requires that the testamentary nature of the instrument shall have been communicated by the decedent to the witnesses. The main purpose in requiring publication is to guard against the subversion of a testator's intent through fraud or imposition, since " from proof of due publication it may be presumed that the decedent had the requisite knowledge of the provisions of the propounded instrument " (1 Davids on New York Law of Wills, § 307). Particular situations are sometimes included in the broad sweep of a statute, which, standing by themselves, would not fall within

its objectives. The courts have frequently recognized that such is the case with holographic wills when it comes to the requirement of publication. The dominant purpose of the Legislature in enacting and amending the statute of wills, has been to render certain that the intention of the testator will be ascertained and given effect without being falsified or perverted by fraud or undue influence. Where a will or codicil is entirely in the handwriting of a testator, there is little room for doubt that he understood the testamentary character of the instrument. In this case no question is raised that Mr. Pulvermacher was ignorant of what he was doing when he wrote the propounded instrument, that he misunderstood its purport, or was acting under the domination of anyone else. He was a man of sound mind, who had accumulated seven hundred thousand dollars. All of these matters are conceded in favor of the instrument. Neither is it questioned that he subscribed the paper himself in the presence of witnesses, who signed their names at his request and in his presence. His testamentary intention, expressed in the writing, has been attested beyond doubt. Must his intention, thus authenticated, be defeated by a requirement of a law enacted primarily for the purpose of carrying testators' intentions into effect? Courts have faced this dilemma before, and have resolved it, not by dispensing with the necessity for publication of holographic wills, but by requiring a lesser degree of proof of publication. Even in the case of nonholographic wills, no particular form of communication to the subscribing witnesses is required. Section 310 of Davids on New York Law of Wills (Vol. 1) states: " In the leading case of *Remsen* v. *Brinckerhoff* [26 Wend. 325] the Court of Errors said that the word ' declare,' as used in the statute, signifies ' to make known, to assert to others, to show forth,' and this is any manner, either ' by words or by acts, in writing or by signs.' A sufficient publication is established by proof that the decedent communicated with the witnesses ' in a manner capable of conveying to the minds of the witnesses his own present consciousness that the paper being executed is a will ' '", citing also *Lane* v. *Lane* (95 N. Y. 494, 498) and *Matter of Beckett* (103 N. Y. 167, 174, affg. 35 Hun 447). In section 313 it is added, concerning attesting witnesses: " Nor is it necessary to prove by them that they understood from the decedent's communication that the instrument was his will. If sufficient words of publication were uttered, it will be conclusively presumed that the witnesses did understand their import ", citing *Torry* v. *Bowen* (15 Barb. 304, see especially p. 308).

The Court of Appeals had occasion to consider the publication of a holographic will in *Matter of Turell* (166 N. Y. 330). There the Surrogate, unanimously affirmed by the Appellate Division, had found as a fact that the attestation clause signed by the witnesses was false, and that actually there had been no communication between testator and witnesses when the will was executed. Inasmuch as the jurisdiction of the Court of Appeals over the case was limited to questions of law, the naked legal issue was presented whether publication could be dispensed with entirely in the case of a holographic instrument. The decision was that the requirement of publication could not be eliminated from the statute, but that whether the will had been published was a question of fact. The Court of Appeals added, apparently for the guidance of future triers of the fact (pp. 336–337): "It is, undoubtedly, true, in the case of a holographic will, that the dangers of fraud and imposition, or of undue influence, against which the statute was designed as a safeguard, are greatly diminished and that it is unnecessary to criticize as closely the terms and manner of publication. The atmosphere of a testamentary instrument, wholly in the handwriting of the testator, is such as, naturally, to dispose the judicial mind to accept it as his will with less strictness in the proof of a compliance with statutory formalities." Courts have taken notice of this distinction in the degree of proof required for the probate of holographic instruments in other cases (*Matter of Levengston*, 158 App. Div. 69; *Matter of Billet*, 106 Misc. 229, 234, revd. on other grounds, 187 App. Div. 309; *Matter of Akers*, 74 App. Div. 461, affd. 173 N. Y. 620; *Matter of Wallace*, 148 Misc. 867).

The subscribing witnesses in the instant case testified that they were ignorant of the nature of the document which they signed. They apparently overstepped a rule of the bank, in whose safe deposit department they were employed, which would have required the attendance of a bank officer. One of them testified that "we wouldn't have signed it if he had said ' a will.' "

Their further testimony, however, was such as to warrant a finding that decedent's words and actions when he signed the paper were sufficient to convey the impression to the ordinary mind that it contained a testamentary disposition of property. As has been pointed out above, if publication of the instrument was thus manifested, it is not necessary to establish that the witnesses understood from the decedent's communication that the instrument was his will. The test is what decedent said and

did, not how the minds of the witnesses operated. The witness Lavelle testified that decedent said he was going away on a trip, and had some instructions in a paper which he had signed that were to be carried out if anything happened. Lavelle testified that he required decedent to sign the document a second time, in order that it might be signed in their presence as witnesses. He testified that decedent had folded the paper in such manner as to place before the witnesses' eyes the last paragraph immediately above both signatures, which concluded with the words '' The business of L. Pulvermacher & Bros. is to be continued is the wish of deceased, otherwise in the event they cannot get along together to dissolve the business and divide ''. The physical condition of the paper shows that it had been folded so that this last paragraph was necessarily in front of the witnesses when they signed their names immediately adjoining and beneath it. Both witnesses said that they did not read this passage, but that was not the fault of the testator. One testified that the quoted paragraph was partially obscured by his hand. The other testified that '' It was within our vision, yes.'' We need not decide whether exhibiting this portion of the paper, under these circumstances, would have been sufficient to establish publication in the absence of any further communication. Both witnesses stated that he said he was going away on a trip, one recalling that he said '' that with all the accidents which you have today you never know what will happen '', and that '' he did say he wanted something taken care of in case anything happened to him ''. This witness testified that decedent referred to the document as containing '' something I want to take care of in case something happens to me.''

It is a mistaken impression that in order to probate this instrument, it is necessary to contradict the testimony of these witnesses, although wills have been admitted '' even in direct opposition to the testimony of both '' of the subscribing witnesses (cf. *Trustees of Auburn Seminary* v. *Calhoun,* 25 N. Y. 422, 425–426) where the formal execution and publication have been '' shown by persons other than the subscribing witnesses or inferred from circumstances '' (*Lewis* v. *Lewis,* 11 N. Y. 220, 224). Here a finding of due publication can and should be based upon the testimony of these subscribing witnesses. It does not contradict their account of what occurred. The decisive question is not whether these witnesses were aware of the nature of the document, but whether, when decedent asked them to sign as witnesses, his words and acts were such as to convey to an ordinary mind the idea that it was a testamentary instrument.

We think that what Mr. Pulvermacher said and did on this occasion, as testified to by these witnesses, would have carried that idea to the average person. It was not necessary that he employ the statutory language, '' I declare '', or state that it was '' a will ''. He did state that the paper which he had written contained '' instructions '' to be carried out '' if anything happened to him ''. They knew that he was doing something solemn which called for the formality of two witnesses to attest his signature. The paper which they signed contained language expressing what was to be done with property belonging to him in event of his decease, a clause which was in front of their eyes when they signed. The same rule applies as concerning witnessing a testator's signature: '' The circumstances of the case may demonstrate with sufficient certainty that they could and must have seen the subscription, in a practical sense — having the opportunity to see it — and from such evidence it may be concluded that they legally did see it '' (1 Davids on New York Law of Wills, § 302; citing *Matter of Look,* 54 Hun 635, opinion per Dwight, J., 7 N. Y. S. 298, affd. without opinion 125 N. Y. 762; *Matter of Van Benschoten,* 105 Misc. 332; *Matter of Bassett,* 84 Misc. 656; *Matter of Stockwell,* 17 Misc. 108, 112). The further statement in section 302 is also relevant: '' If the position of the signatures of the witnesses on the face of the paper bears the usual relation to the place of subscription, and it is established satisfactorily that the instrument was not folded so as to conceal the decedent's signature, it may be concluded that the witnesses in fact saw the subscription '', citing *Matter of Laudy* (161 N. Y. 429, 433) and numerous other cases. This statement of the law is applicable to the clause that has been mentioned in the instrument now propounded for probate, which is testamentary in character, and directs how the business of L. Pulvermacher & Bros. is to be disposed of in event of testator's decease. It certainly was of such a nature as to inform any person reading it that the paper was a will or codicil. The signatures of these witnesses immediately follow this paragraph which the decedent placed directly in front of them. Their signatures are less than one inch below and five inches across the page from the words in testator's handwriting '' is wish of deceased ''.

In *Matter of Palmer* (42 Misc. 469), Surrogate Church of Kings County said: '' In substance, we have the deceased stating to the first witness that he had written out a paper so that his matters could be attended to in case of anything happen-

ing to him; this was, in effect, a declaration that this was his will ''. The same is true here.

These declarations made by Mr. Pulvermacher are not susceptible of the interpretation that he was executing a power of attorney, or an instrument of gift *inter vivos,* or an assignment. He told these witnesses that the document contained instructions to be carried out *if anything happened to him.* Neither a gift *inter vivos* nor an assignment nor a power of attorney could be exercised or consummated after death.

The decree appealed from should be reversed, with costs to appellants payable out of the estate, and the instrument dated January 14, 1949, should be admitted to probate. The finding that this document was not published as and for the last will and testament of Robert Pulvermacher, deceased, should be reversed and a new finding made in accordance with this opinion that he declared it to be his last will and testament to the subscribing witnesses at the time of its execution.

COHN, J. (dissenting). The Surrogate was fully warranted in holding that upon the evidence adduced before him decedent did not declare the holographic instrument to be his last will and testament.

Subdivision 3 of section 21 of the Decedent Estate Law provides: '' The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed, to be his last will and testament.''

To comply with the statute there must be proof that the testamentary character of the instrument was communicated by decedent to the witnesses, and that the instrument was signed by him. '' It must appear that, as between the testator and the witnesses, there was some meeting of the minds upon the understanding that the instrument was the testator's will; that it had been subscribed by him and that the attestation of the latter was desired to the will so subscribed.'' (*Matter of Turell,* 166 N. Y. 330, 337.)

Here the testimony of the only two witnesses present at the time of execution, expressly negatived any claim of publication or communication of the character of the paper subscribed. Each testified that decedent did not declare that the paper was his will. Neither of them understood it to be a will from decedent's words or conduct.

Proponents of the document do not fill the void of the testimony on behalf of the only two persons present at the execution of the will by offering reasons for disbelief in the testimony of

those witnesses. (*Matter of Moore,* 109 App. Div. 762, 767, 768, affd. 187 N. Y. 573.)

As the Surrogate noted, the statements of decedent that he was going on a trip and was leaving instructions in case anything should happen, do not give rise to the inference that the paper was testamentary in character. Such statements of decedent may have been referable to other documents as well as to a will.

In the circumstances, probate of the instrument was properly denied.

DORE, J. P., CALLAHAN and BREITEL, JJ., concur with VAN VOORHIS, J.; COHN, J., dissents and votes to affirm, in opinion.

Decree reversed, with costs to appellants payable out of the estate. Settle order on notice.