James S. Brown,
Acting Judge of the Surrogate’s Court. The instrument offered for probate, dated January 21,1924, is written on the first page of a conventional sheet of note paper folded in half so as to form four pages. The area upon which the writing appears is approximately 6 inches long and about 5 inches in width. Down to and including the signature of the decedent it is entirely in the handwriting of the decedent. The words ‘ my Will and Testament,” written clearly by the decedent are less than four inches from the bottom of the sheet and less than two inches above the decedent’s signature. Following his signature there is written “ Witnessed this 21st day of January 1924.” The signature and address of the first witness appears to be in the same handwriting as the quoted portion beginning “ Witnessed.” At the bottom of the sheet there is the signature and address of the second witness. Both witnesses to the instrument are dead and there is no attestation clause.
The evidence adduced established that decedent was a notary public at the time he executed the will in 1924. On June 20,1933 decedent deposited the will with the Surrogate’s Court of Queens County for safekeeping. It remained in the custody of the said court until it was delivered to this court after decedent died in 1965. On June 21,° 1933 decedent entrusted his brother-in-law with a sealed envelope marked ‘ ‘ Important Papers. ’ ’ He had .enclosed therein a card in his handwriting stating “ My Will and Testament is in care of The Queen’s County Surrogate Court.”
The signatures of the decedent and the two subscribing witnesses have been duly proved. Decedent’s testamentary capac *683 ity has been established to the satisfaction of the court. Probate of the propounded instrument is resisted on the ground that there is insufficient proof of compliance with the formalities required by section 21 of the Decedent Estate Law.
Section 142 of the Surrogate’s Court Act provides that if all the subscribing witnesses to a written will are dead, the will nevertheless may be established upon proof of the handwriting of the testator and of the subscribing witnesses and also of such other circumstances as would be sufficient to prove the will upon the trial of an action.
In the case of Jackson v. Luquere (5 Cow. 221, 224 [1825]) the then Supreme Court of this State, in a curia opinion per Woodworth, J., stated the substance of the present statutory provision this way: “ It is necessary, in every case, to establish the fact, that the testator executed in the presence of three witnesses ; or, in cases where such proof does not exist, to give other evidence from which it may be presumed. This may be done by calling one or more of the witnesses, to prove the execution agreeably to the statute; or, if the witnesses are dead, proof of their handwriting and that of the testator, is proper to be left to the jury, upon the question, whether, under such circumstances, it may not be presumed that the formalities of the statute were observed.”
In Matter of Rosenthal (100 Misc. 84) the signatures of the decedent and the two witnesses were proved. There was no attestation clause. . Judge Fowler in admitting the will to probate said (pp. 84-86): “ By the law of this court, i.e., the common law applicable to probate courts, there is, I think, a presumption that a testamentary script coming from proper custody, if subscribed by the deceased testator and witnessed by two witnesses since deceased, was executed according to the Statute of Wills. * * * Courts of probate, for example, have a set of presumptions peculiarly their own. The presumptions entertained in such courts relative to holographic testaments are but one instance. If a testament in due form of law is found at his death in the custody of the testator, the presumption of animus testandi, while constantly ignored in courts of law, is of great weight in courts of probate where the jurisdiction of testaments immemorially rests. From a presumption of animus testemdi to a presumption of regularity of execution, in the absence of all proof to the contrary, is but a short step, and where the will bears the attestation of two witnesses since deceased, but whose signatures are duly manifested, the presumption of regularity of execution in conformity with the Statute of Wills becomes imperative in a probate court, whatever *684 view other courts may entertain of their duty in analogous matters not confided to courts of probate.”
In Matter of Stockwell (17 Misc. 108) the will was a holograph. Neither witness who testified saw testatrix sign her name and she did not acknowledge the signature to either of them. One of the witnesses said he saw the signature; the other testified she did not think she saw the signature; “ I don’t remember.” She could not tell positively whether testatrix had subscribed the will when she signed as a witness. The court commented (p. 111): “ The paper itself, upon inspection, shows that she must have seen Miss Stockwell’s signature when she wrote her own name as a witness, because it would have been a physical impossibility for her to have signed her name where she did without seeing Miss Stockwell’s signature.” She “ signed her name immediately below that of her husband and not more than an inch below the signature of the testatrix, but on the left side of the page, while the signature of the testatrix was on the right side ” (p. 111).
In Matter of McDougall (87 Hun 349) the Surrogate denied probate on the ground that one of the subscribing witnesses neither saw testatrix subscribe her name and did not see the signature at the time he witnessed the will. The General Term, First Department, reversed and remitted for rehearing noting (p. 351): “ the position of the signature upon the instrument shows conclusively * * * that he did see the signature of the testatrix. ’ ’
In Matter of Van Benschoten (105 Misc. 332) the contested will was a holograph lacking an attestation clause. One of the two witnesses testified to execution. The other witness was dead. The surviving witness testified the will was signed at the time she and the deceased witness signed; testatrix did not state it was her signature but the living witness saw the signature. The signature of the deceased witness was on the line below the signature of the testatrix. The court stated (p. 335) that the clear rule deducible from the probate cases he cited to be “if a witness could see, then legally he did see, ’ ’ and admitted the will to probate.
In Matter of Briggs (47 App. Div. 47) the will was a holograph, with no attestation clause, and each of the witnesses was dead. A friend of the testator testified that in 1890 — the will was dated in 1863 — testator told him of the details of the making of the will, all of which were in accord with the required statutory execution. This evidence came in apparently without objection.. The Surrogate’s Court, admitted the.will,to probate. *685 This is interesting and apropos to the present circumstances (p. 50): “Although it is doubtful whether this will can be considered to be an ancient document, so as to raise a presumption as to due execution upon presentation of it and proof of the handwriting of the subscribing witnesses, yet, in view of the length of time which elapsed since it was made and before it was presented for probate, and all the other circumstances proved in the case, this is clearly one in which the most liberal presumptions in favor of its execution would be indulged in. ”
The will in Matter of Abel (136 App. Div. 788) bore the signatures of the testatrix and three subscribing witnesses. “ There is no formal attestation clause save to the extent that the signatures of the subscribing witnesses appear immediately under the word ‘ witnesses ’ ” (p. 789). All three witnesses are dead. Their signatures and that of the decedent were proved, and there was proof of testamentary capacity. At the time of the execution, testatrix’ husband executed a will in his home. The husband’s will was attested by the same subscribing witnesses and there was proof of the due execution of the husband’s will. Yet there was no direct evidence as to what was said or done by the wife, other than her signature and those of the subscribing witnesses. In affirming the probate, the court commented (pp. 790-791):
“Many issuable facts are sometimes impossible of direct proof and can be established only by inference from other established /acts. Even where direct proof is not impossible, the issuable facts may be established by inference or legal presumption based upon other proven facts. The question is not one of propriety of evidence but rather one of weight of evidence. * * *
“ This is not merely a case where a will is sought to be established on handwriting proofs alone. "While there is no direct evidence as to all the circumstances surrounding the execution of the instrument, there is evidence as to many of the circumstances, and the only question is whether the circumstances shown here are of such a nature as to permit a natural inference as to the circumstances not shown directly.”
It was held that a prima facie case was made from the facts proved which on the trial of an action would have required the submission of due execution to a jury, and the Surrogate having made the determination it would not be interfered with.
In Matter of Nelson (141 N. Y. 152) the will offered for probate did have an attestation clause which was defective for the reason that it omitted to state that testator requested the *686 subscribing witnesses to sign the will. Not only was there this omission but the only surviving witness denied the fact. In affirming a judgment admitting the will to probate the Court of Appeals noted (p. 157): “The proof of Judge Nelson’s declarations and acts, occurring after the execution of the will, was admissible to show his knowledge of the testamentary character of the instrument and to dispel any possible claim of mistake or imposition.”
With respect to publication of a will, in Remsen v. Brinkerhoff (26 Wend. 325, 331) the Chief Justice expressed the view “ that no form of words will be necessary; that the legislature only meant there should be some communication to the witnesses indicating that the testator intended to give effect to the paper as his will. Any communication of this idea, or to this effect, will meet the object of the statute.”
The objectants rely on Matter of Ellery (139 App. Div. 244) which is almost exactly like this case. The Surrogate found that the holograph was in the handwriting of the decedent, signed by her and that the handwriting of the two witnesses was genuine. He concluded that the instrument was properly executed and valid. The Appellate Division, Second Department, said (pp. 245-246): “ The evidence is sufficient to justify the findings of fact, but I think that the facts do not justify the conclusion of law because there was not sufficient proof of ‘ such other circumstances. ’ The fact that the will is a holograph does not except it from the terms of the statutory requirements of execution. Although there is less strictness in the case of a holographic will, it must appear that there was some substantial compliance with the prescribed formalities of publication.” The conclusion of the Appellate Division was (pp. 247-248): “ To affirm this order we must hold that a jury would be warranted in finding the publication of a holographic will without a formal attestation clause, when the handwriting of the testator and of the subscribing witnesses was established and there was proof that the testator at some time in the absence of the sole devisee and legatee spoke to a friend with reference to a will, and the inference could be drawn that the will made a natural and reasonable disposition of the testator’s estate. Examination of other judgments in this State, wherein similar questions arose and were disposed of, fails to show any case where so informal a document, upon such a paucity of proof, was held to be established under this statute or similar statutes.”
The Court of Appeals in Matter of Pulvermacher (305 N. Y. 378) which was also the case of a holographic will without an *687 attestation clause, made no mention of Matter of Ellery in its decision. In that Pulvermacher case the subscribing witnesses denied affirmatively that they knew the instrument they had witnessed was a will. The court stated (p. 385) that “ Neither the relationship of the bank attendants [the witnesses] to Pulvermacher nor the surrounding circumstances were sufficient to bring home to those witnesses that the writing was a will.”
However, in this case at bar, the internal evidence of the document is sufficient to permit the inference that the subscribing witnesses must have known that the instrument they signed was a will because it seems almost impossible for a literate person to have signed it without seeing the words “ last Will and Testament ” in the body of the will. Unlike Pulvermacher, this Amico will bears no evidence of folding except a fold in the center of the sheet made in such a way that it would have been impossible to have signed it folded as it appears to have been folded. In other words, if it were folded when presented for signature by the witnesses, the witness would have had to unfold it in order to sign it.
Much is made in the objectant’s brief of Matter of Pulvermacher (305 N. Y. 378, supra). A fuller understanding of this decision can be gathered if the cited opinion is read together with the opinion of the Appellate Division, per Van Voorhis, J. (280 App. Div. 575). Pulvermacher apparently made out the propounded instrument in the safe-deposit vault of his bank. According to the two bank guards, whom he asked to be witnesses, Pulvermacher was going on a trip and was leaving instructions. The Court of Appeals held that the evidence was at best equivocal. Both witnesses testified emphatically they did not know they were witnessing a testamentary disposition. Judge Van Voobhis, writing for the Appellate Division, had noted that a part of the paper was before the subscribing witnesses at the time they signed it. This was (p. 579): “ The business of L. Pulvermacher & Bros, is to be continued is the wish of deceased, otherwise in the event they cannot get along together to dissolve the business and divide.” He said (p. 580) : “ They knew he was doing something solemn which called for the formality of two witnesses to attest his signature. The paper which they had signed contained language expressing what was to be done with property belonging to him in event of his decease, a clause which was in front of their eyes when they signed. The same rule applies as concerning witnessing a testator’s signature. ‘ The circumstances of the case may demonstrate with sufficient certainty that they could and must *688 have seen the subscription, in a practical sense — having the opportunity to see it — and from such evidence it may be concluded that they legally did see it ’ ’ The substance of the decision of the Court of Appeals is that the witnesses denied that they knew it was a will and proponents had offered no evidence the will was published.
"We have much more in the case at bar than was present in the Pulvermacher case. It is true that the Pulvermacher witnesses testified to the signing of the will, the request to the witnesses and all formalities of due execution save the essential one of publication. In this present Amico case all the requisites of execution must be inferred from the paper itself. From the position of the signatures of the decedent and of the witnesses it may be inferred that the signature of the testator was on the papers at the time of the signing by the two witnesses and that they did in fact see it. From the cases cited above it is fair to conclude that this was a sufficient signing by the testator in their presence or a sufficient acknowledgment by him that he signed the paper. From the physical condition of the instrument, anyone signing the paper as a witness would have clearly and distinctly before him the words “ my last Will and Testament ” and it is reasonable to infer that he had read them and there was a meeting of the minds of the decedent and the witnesses that the paper they were witnessing was in fact a will. There is no evidence to the contrary in the record. The fact that the witnesses did sign as witnesses is a sufficient basis for holding that they were requested to do what they did do.
The unquestioned age of the paper, and the fact that decedent did deposit it, over 30 years before his death, with the Surrogate’s Court of Queens County, favor an inference that decedent knew he complied substantially with the statute in executing the paper. The decedent was a notary public at the time he wrote this paper. He can be charged with a certain familiarity with legal documents. The fact that this paper was not executed and sworn to before a notary public indicates that he was aware that a will was an instrument not requiring a jurat or an acknowledgment before an officer. The fact that the paper did have two witnesses and the fact that the word “Witnessed” was used implies that he had some knowledge of the requirements of the execution of wills.
The' circumstances surrounding the propounded instrument are sufficient to require submission of the question of its due execution to a jury for determination. In the absence of a jury the court is satisfied on all the proof of the validity of the *689 propounded instrument, that it was executed in accordance with the requirements of the Statute of Wills (Decedent Estate Law, art. 2) and that at the time of its execution decedent was of sound mind, competent in all respects to make a will and not under restraint (Decedent Estate Law, § 21; Surrogate’s Ct. Act, §§ 142, 144). Probate of the said instrument is decreed and the objections thereto are dismissed.