BOGARDUS and others *vs.* CLARKE and others.

Although the insanity of a testator is passed upon by a surrogate and, on an appeal from his decision, the Chancellor determines against the will, still it is only conclusive as regards the personal estate. The question, whether there is a devise of the real estate or not, remains open and can only be set at rest through an issue or a trial at law.

Therefore, in such a case, no partition can be had pending this question.

*January* 31,
1832.

*Will of real
and personal
estate.
Surrogate's
powers.*

THE bill in this cause was filed for partition of the real estate of which John Fisher of Brooklyn, Kings county, died seized. The matter came up on bill and answer.

The deceased, John Fisher, had made a will, which the surrogate of King's county admitted to probate. On an appeal to the Chancellor, the surrogate's decision was reversed, upon the grounds of insanity and restraint. The particulars of the case are reported in 1 *Paige's C. R.* 177. The decree of the Chancellor still remained in full force.

The complainants insisted, that the circumstances made out a case of complete intestacy. On the other hand, the defendants, Lemuel Sawyer and wife, denied the intestacy as alleged; and they set up the instrument as a subsisting will, under which the latter claimed to be devisee of the real estate. They insisted, that neither the order of the surrogate nor the decree of the court of Chancery which reversed it, had any effect whatever in establishing or invalidating the will as respected the lands, and only affected the personal property.

Mr. *Samuel Sherwood,* for the complainants.

Mr. *David S. Jones,* for the defendants.

THE VICE-CHANCELLOR. The question before the Chancellor was, whether the will of John Fisher was valid as a

will of personal property only ? *Now*, the point is, whether it is good as a will to pass real estate. It is true, that both of these depend upon the same state of facts and circumstances: the mental capacity of the testator. Nevertheless, the decision of them confessedly belongs to different tribunals, and would have to be determined by a different course of proceeding and mode of trial. In England, the first is confided to the ecclesiastical courts; and under our system, it is left to surrogates. While the latter, both here and in England, is determined in the common law courts. The jurisdictions have always been kept distinct. Each tribunal pursues its own appropriate method of investigating the facts: per Savage, C. J. in *Rogers* v. *Rogers, 3 Wend. R.* 515. And hence it is that, whenever the execution of a will concerning lands is impeached in chancery, the uniform practice is to send it to a trial at law before this court will decree for or against its validity.

The jurisdiction which pertains to the ecclesiastical courts in England, was, with us, after the revolution, vested in a court of probates (1 Greenl. ed. 18, sec. 3 ;) and afterwards, in surrogates, with a right of appeal to the judge of probates. This was an exclusive jurisdiction (1 Rev. Laws of 1813, 444, sec. 1, 32.) When this court was abolished, the appeal was given to the Chancellor; and it was declared he should have therein all the powers and jurisdiction then possessed by the judge of the court of probates (6 vol. Laws of N. Y. *b.* 63.) The appellate power, thus conferred, extended no further than to the affirmance or reversal of the orders of the surrogate; and, consequently, applied only to the testament as a will of personal estate. Beyond this, the decision could have no effect: because, the exercise of the original or appellate power did not require an investigation into the circumstances of its execution as a will of real estate nor any notice to those who were interested in the latter. And if they should happen to be the parties before the surrogate, it is rather owing to accident than to any requirements of law. Besides, the laws have always pointed out a different course of proceeding, and, until the Revised Statutes, a different tribunal, whenever a will concerning real estate was required to be proved; and even under the Revised

Statutes, with the additional authority there conferred upon surrogates, the mode of proceeding, to prove a will of real estate, is different from that of a will of personal property.

These considerations induce me to think, that neither the decision of the Chancellor upon the appeal, any more than the determination of a surrogate in the first instance, can be regarded as binding and conclusive upon the parties, when the will is brought forward as a devise of real estate. The point was not passed upon as such by the Chancellor, and, it was not competent for the surrogate or the Chancellor sitting on the appeal to adjudicate upon it.

These views of the case are abundantly supported by authority, although it may lead to an anomaly of this sort: that a will containing a disposition of both real and personal estate which is set aside by a surrogate on account of the insanity of the testator, can, nevertheless, be established as a valid will in a court of law so far as the real estate is concerned. If there be any absurdity in this, it is one which has long been perceived but never remedied. *Montgomery* v. *Clark*, 2 *Atk.* 378, was a case where a verdict at law had been obtained against the validity of a will as it respected the real estate on the ground of insanity. A motion was then made to compel the defendant Clark, one of the trustees and an executor, to pay into court the moneys received from the personal estate and to restrain him from receiving any more. The executor insisted, that he was still at liberty to support the will in the ecclesiastical court. Lord Hardwicke acknowledged it to be a great absurdity, but said, it was not in the power of the court to interpose so as to stop the proceedings in the ecclesiastical court, and all he could do was to express a wish that the legislature would find a remedy. It is true, as has been remarked in the present case, it does not distinctly appear whether the defendant was a party to the trial at law, although the case shows he was a trustee as well as an executor; and if not a party, then, it is said, the verdict would not bind him. But the next case to which I shall refer will show, that it makes no difference whether the parties are the same in the two courts or not. I allude to the recent case of *Clark* v. *Dew*, 1 *Russ. & M.* 103. There, a

1832.

BOGARDUS
v.
CLARKE.

motion was made on behalf of the plaintiff, Clark, for the appointment of a receiver of real estate, which he claimed to be entitled to by the will of his deceased uncle. The bill was filed against Mrs. Dew, the heiress at law, for the purpose of establishing the will and carrying certain trusts of the devised real estate into execution; and it prayed an issue of *devisavit vel non* to try the validity of the will. This will had been contested as to the personal estate in the prerogative court and court of delegates; and where, after a long litigation in relation to the alleged insanity of the testator, it had been finally decided by two successive judgments to be invalid as a will. See the case reported in 3 *Addams' Eccles. R.* 79, and 1 *Haggard's Eccles. R.* 311. These proceedings were set up by Mrs. Dew in her answer as sufficiently establishing the invalidity of the will and her rights as the testator's next of kin and heiress at law; and, upon these grounds, she resisted the motion. The matter was argued by the ablest counsel; but it was not pretended that the judgments of the ecclesiastical courts, finding the will " to be inoperative by reason of the tes-" tator's incapacity, was entitled to any other consideration " than as showing it to be ' in the highest degree unlikely' that " an appeal to a jury upon that point would be attended by a " different result." And Lord Lyndhurst, in deciding upon the motion, puts it upon the ground of the plaintiff's title being in dispute; observing, that the only question to be tried, in order to determine the point, was the sanity of the testator. This question, however, he goes on to say, had been already fully investigated as far as regarded the personal estate and, although the result was not conclusive as to the property claimed by the plaintiff, the contest lay between the same parties and the result of those proceedings was such as to furnish no reasonable ground for believing the plaintiff would succeed when he brought the will before the proper tribunal on an issue at law. He, therefore, and in the exercise of his discretion, denied the motion for a receiver over the real estate. This is a strong case and seems to me to put the question we are considering very much at rest. It shows clearly, how the judgments of the ecclessiastical courts, in relation to the validity of wills, have

not the extensive and conclusive effect which has been contended for. And I think the reason is very fairly given by Ch. Baron Yelverton, in *Hume* v. *Burton*, 1 *Ridg. P. C.* 277, where he observes, (by way of elucidating his opinion upon the subject he was considering,) "no two acts can be supposed to be " more intimately connected with each other, both in unity of " time and of assurance, than a will of real and personal es- " tate written upon one and the same piece of paper and sub- " scribed by one and the same signature. And yet it is clear " law, that though the probate of such will is conclusive evi- " dence of the sanity of the testator to make such will, yet it is " by no means conclusive evidence of his capacity to dispose " of his real estate—and why? because the capacity of the " party to do the two acts is triable by different jurisdictions." It only remains for me to advert to the case of *Vanderheyden* v. *Reid, Hopk. C. R.* 408, which was an appeal from a surrogate who had admitted a will to probate where the sanity of the testator was controverted. The point raised and discussed before Chancellor Sanford, and upon which the cause there turned, was, whether an issue could be awarded in cases of this description coming up on appeal. He held it was competent for the court to direct an issue in such cases—that such a course would avoid the incongruity which the decisions of different tribunals might produce in relation to the same will. His decision was appealed from and reversed: but not upon the merits: 5 *Cowen's R.* 720. I am, therefore, not justified in considering his conclusion erroneous. Nor do I perceive any thing in the principle of the decision at variance with the views which I have taken. According to these views, the question, whether there is a devise of the real estate or not, remains open—is by no means conclusively settled—and, pending this question, no decree can be made for partition: for, if the will should be established, then Mrs. Clarke will have no title to the lands.

The pleadings in the cause show, that another suit is depending in this court upon a bill filed to set aside the will. This must determine the controversy, In the mean time, according to *Wilkin* v. *Wilkin,* 1 *J. C. R.* 111, the present suit can be re-

tained, with liberty to proceed upon it if the will should be set aside in this court; but I think it must be upon payment of the costs of this hearing.