HAVENS *v.* EXSTEIN *et al.*

(*Supreme Court, General Term, Fifth Department.*  April 11, 1890.)

FRAUDULENT CONVEYANCES—STOCK IN TRADE—RESERVATION.

A debtor conveyed his stock of goods to defendants, his creditors, by an instrument which recited the indebtedness, and provided that the debtor was to act as defendants' agent in selling the goods, and such additions thereto as defendants might make; that the debtor, during such agency, was to render weekly statements, remitting at the same time the proceeds of the sales, less expenses; and that the agency was to be revocable at the pleasure of the principals. The *bona fides* of defendants' debt was not disputed. *Held,* that, in the absence of an agreement that the debtor should retain from the sales more than a reasonable compensation, or that defendants knew that he was appropriating more than this, there was nothing to raise a presumption of fraud in the conveyance. Affirming 5 N. Y. Supp. 735.

Appeal from special term, Monroe county.

Action by James S. Havens, receiver of David Selling, against Julia A. Exstein and others, to set aside as fraudulent an assignment of certain goods. From a judgment dismissing the complaint plaintiff appeals.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*Waldo G. Morse,* for appellant.  *B. Frank Oake,* for respondents.

MACOMBER, J. The defendant Selling, on the 15th day of June, 1885, executed to the other defendants, who composed a partnership, a transfer of his stock of goods. The plaintiff, who is the receiver of the property of the defendant Selling, appointed in proceedings supplementary to execution, brings this action to set aside such transfer as fraudulent. At the time of the execution of the assignment or transfer of the stock of goods, Selling was indebted to Exstein & Co. in the sum of $1,579.96 for goods sold and delivered to him. The amount of the indebtedness and the good faith of the firm of Exstein & Co. do not seem to be seriously called in question in this action. The agreement so entered into between the parties recited such indebtedness, and then proceeded to transfer, for the further sum of one dollar, such stock of goods. There was also a provision in this contract by which Selling was to act as the agent of the transferees in disposing of these goods, together with such additions thereto as might be made by him, under the name or on account of Exstein & Co. There was also a provision by which Selling was to render weekly statements of accounts to his principals, with remittances to them of all proceeds of such sale, less moneys actually paid out in the business for expenses. Exstein & Co. had the power, under this agreement, by its terms, to put an end to the agency at any time. By a separate instrument, and supplementary to the principal agreement above mentioned, the parties thereto entered into a further agreement, by which, after paying Exstein & Co. in full, the net profits of the business, if any, should belong to Selling. The original agreement was duly filed in the clerk's office of the county of Monroe as a chattel mortgage. In pursuance of the two agreements, Selling continued the business at the same place without any apparent change in the ownership or the manner of conducting the business. Additions were made to the stock in trade from time to time, as the same were required, and Selling continued to render apparently proper and correct weekly statements of the business, as provided by the agreement, down to September 27, 1886, when Exstein & Co. sold one-half interest in the stock and business to one Julius W. Georger for the sum of $750. Thereafter, and until February, 1888, the business was continued by Selling in the interest of Exstein & Co. and Georger, as theretofore, when the stock remaining undisposed of, including such additions as have been purchased, was transferred to the wife of the defendant Selling and one Ottenberg, for the sum of $3,605.29, and they continued the business subsequently. By this transaction the firm of Exstein & Co. or Exstein & Co. and Georger were paid in full for their indebtedness, including any liability on their part for the additions made to the stock in trade. It is shown with reasonable conclusiveness that at the time of the transfer by Selling, on the 15th day of June, 1886, the assignor was insolvent, but no other creditors were pressing him, and there was no established claim outstanding against him in the hands of the plaintiff, or the person whom he represents. Taking the two agreements together, with the light thrown upon their purpose given by the evidence in the case, it is quite apparent that the whole transaction amounted to a security to Exstein & Co., in the nature of the mortgage, for their debt. If this was done in good faith, the transferrer or assignor or mortgagor had the right to reserve to himself any surplus, after paying the debt which it was intended to be secured by the transaction. *Leitch* v. *Hollister*, 4 N. Y. 211; *Dunham* v. *Whitehead*, 21 N. Y. 131; *Knapp* v. *McGowen*, 96 N. Y. 75. It is argued by the learned counsel for the appellant that the fact that Selling was permitted to remain in charge of the store after the transfer, and to avail himself of the profits thereof, as there is some evidence to show that he did in spite of the agreement, the transaction was colorable only, and hence fraudulent as to creditors. If, however, there was any appropriation of the profits by Selling during this time, and before Exstein & Co. were paid in full of their indebtedness, the same was done outside of the contracts, and in violation thereof. Hence it was

incumbent upon the plaintiff to show, in order to avail himself of that contention, that the appropriation of the moneys or the proceeds of the sales by Selling was with the knowledge or consent of Exstein & Co. or of some member of that firm. *Brackett* v. *Harvey*, 91 N. Y. 214. This evidence, however, is wholly lacking in the case; hence the argument cannot bring the appeal within the case of *Potts* v. *Hart*, 99 N. Y. 168, 1 N. E. Rep. 605. If Selling cheated Exstein & Co. in the rendition of his weekly statements, the plaintiff is not in any position to avail himself of the rule contended for.

It is further argued by counsel for the appellant that, the chattel mortgage not having been filed within the time prescribed by the statute, the same became inoperative, as against the claim represented by the plaintiff. This court is committed to the contrary of that proposition in the case of *Steward* v. *Cole*, 43 Hun, 164, the correctness of which we have had no occasion to question by any subsequent decision. Except for this consideration, the further and only other question in the case, namely, whether or not the nature of the claim represented by the plaintiff as receiver is of such a character as to enable him to maintain this action, would become important. The judgment under which the plaintiff was appointed receiver was not upon a contract, nor upon any matter the value of which might be ascertained by computation. It was for a tort, and the liability to respond upon such a claim, for the amount of the claim, was not ascertained at the time of this transfer of the property by Selling to Exstein & Co.; but it is not necessary to enter into a consideration of this branch of the case, because whatever views we might entertain concerning it can hardly strengthen the propositions already mentioned, which lead necessarily to an affirmance of the judgment. The judgment should be affirmed, with costs. All concur.