## KIRWIN v. MALONE.

(Supreme Court, Appellate Division, Third Department. November 15, 1899.)

1. PLEADING—VARIANCE—CONVERSION.

   Where a complaint alleges that defendant undertook the management of the affairs of plaintiff's intestate, who was insane, and procured from her orders on banks for her deposits therein, on which he drew from such banks all her money, but never paid the same to her or to the plaintiff, the charge of the complaint is for fraudulent conversion; and on proof that defendant drew such money at the request of plaintiff's intestate, and paid the same over to her, there can be no recovery on the ground that defendant did not exercise reasonable care and prudence in turning the same over to her.

**2. EXECUTORS AND ADMINISTRATORS—PLEADINGS—LIMITED LETTERS—EVIDENCE.**
　　Proof that limited letters of administration were granted to the plaintiff under Code Civ. Proc. § 2664, providing that, where a right of action is granted to an executor or administrator by law, the surrogate may, in his discretion, accept modified security and issue letters limited to the prosecution of such action, will not sustain an allegation in the complaint that unrestricted letters were granted to the plaintiff, so as to authorize plaintiff to maintain an action not designated by the letters.

Appeal from trial term, Rensselaer county.

Action by Margaret Kirwin, as administratrix of the estate of Julia Looney, deceased, against Thomas J. Malone, for the fraudulent conversion of money. Judgment for plaintiff. Defendant appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

John T. Norton, for appellant.
James B. Egan and Lansing & Holmes, for respondent.

LANDON, J. The main question presented upon this appeal is whether the recovery against the defendant is upon the cause of action stated in the complaint. We think it is upon a substantially different cause of action. After alleging that Julia Looney died September 7, 1897, intestate, and plaintiff's subsequent appointment as administratrix, the complaint alleges that Julia Looney, prior to and at the dates hereinafter stated, had on deposit in the National Bank of Troy $3,594.68, and $3,000 in the Troy Savings Bank; that she was old, feeble, incompetent, and insane; that the defendant assumed to look after her affairs, and did so, caring for her personal wants, and acting as her agent and trustee in respect of her money and property; that March 15, 1897, when she was incompetent, he procured from her her order on the National Bank of Troy for her deposit therein, and drew therefrom the amount thereof, namely, $3,594.68, and never accounted to her for the same, "or, if he did, it was when she was insane, and unfit to transact any business or receive such moneys, which fact was well known to the defendant at the time"; that he never paid such moneys, or any part thereof, to her nor to the plaintiff; that, upon another order given by her to him when she was insane, August 26, 1897, on the Troy Savings Bank, he drew $3,052.56 therefrom on that day, and kept the money himself; that plaintiff demanded such moneys from defendant, and he refused to pay them to her. The defendant, by his answer, admits that he drew the money from the banks upon orders given to him by Julia Looney, and alleges that he did so at her request; that he thereupon delivered the same to her; and denies the other allegations of the complaint above set forth.

The complaint thus charges the defendant with defrauding Mrs. Looney, and converting her money to his own use. The allegations in the complaint as to her insanity and incapacity, and the defendant's assumption to act as her agent or trustee, are parts of the specification of the incidents of the fraud, and the manner in which the defendant accomplished it. As to the first cause of ac-

tion, this charge is stated in an alternative form; but the alternative, namely, that, "if he did [account], it was when she was insane," and he knew it, is followed by the charge that the defendant kept the money,—thus suggesting the accounting as a fraudulent means in aid of defendant's conversion, or as an attempt to conceal it. The second cause of action contains no such alternative allegation, but is a charge of conversion by direct means.

The course of the trial and the instructions of the court to the jury present the question, under the ample exceptions of the defendant, whether he has not been cast in damages upon a case substantially at variance with the one charged against him in the complaint. Evidence was given on the trial tending to show that Mrs. Looney had senile dementia, and was incompetent to understand or manage her affairs; that she was living as a tenant in a house of defendant, who interested himself in her affairs and acted for her. The defendant offered evidence tending to show that her mental capacity was good. He proved by one witness his delivery of a large amount of money in bundles of bills to Mrs. Looney on the date of her order on the National Bank of Troy, and by another witness like payment to her on the date of the order on the Troy Savings Bank. In the course of the trial, the defendant objected to the evidence tending to show the insanity of Mrs. Looney as immaterial, under the issues. A colloquy then ensued between the court and counsel, in which the defendant's counsel asked that the plaintiff's counsel should elect and state which of the three alleged causes of action he relied upon,—whether for money had and received, for conversion, or for fraud. Counsel for plaintiff disclaimed fraud, but claimed to recover for money had and received by defendant while acting for Mrs. Looney when she was insane, and contended that, if she was insane, the defendant had no right to draw her money, but, if he did, he had no right to deliver it to her, he knowing her insanity, and therefore was liable, whether he paid it to her or not, and said they did not propose to trace the money beyond the defendant; that the action was for money wrongfully received. The court said:

"Their [the plaintiff's] theory is that the defendant is acting as trustee, not under the order of the court, but voluntarily, of the estate of the lunatic. While so acting, he received property of the lunatic, and now is called upon to account for it. I will overrule the objection."

The defendant excepted, and said:

"In the aspect the case has assumed now, I move to dismiss the complaint, on the ground that it does not state facts sufficient to state a cause of action."

The motion was denied. The trial proceeded upon this theory. In charging the jury, the learned trial judge said:

"Her [the plaintiff's] theory is that at that time when the defendant drew the moneys he was acting in a general way for Julia Looney in the management of her affairs, knowing her to be incapable of the management of her own affairs, and that by reason of his imprudence—his want of due care which he owed to Julia Looney as trustee in the management of her affairs—these moneys were lost to her and to her estate; * * * and it is only upon that theory can the plaintiff recover."

The learned judge then instructed the jury that their verdict depended upon the following questions: (1) Whether Julia Looney at the time of the transactions was in fact incapable of the management of her affairs. (2) Whether the defendant knew it, or reasonably ought to have known it. (3) Whether the defendant undertook, as a self-imposed task, the management of her affairs. If the jury should find any of these questions in the negative, the defendant was not liable. (4) If the jury should find these questions in the affirmative, then they should determine whether the defendant exercised reasonable care and prudence in respect to the disposition of the moneys, whatever that disposition was, and, if he did not, whether the money was thereby lost. If he did, he was not liable, although the money was lost; if he did not, he was liable for the loss. The learned judge also instructed the jury to determine whether the defendant did in fact deliver the moneys to Julia Looney. He spoke of this fact as important, but he expressly declined to hold that such delivery would relieve the defendant from liability, and refused to charge that the burden was upon the plaintiff to show that the defendant did not return these moneys to Mrs. Looney. He was asked and refused to charge that, as the complaint did not charge the defendant with negligence, the plaintiff could not recover upon that ground.

The jury, upon the theory on which the case was tried and under these instructions, could find against the defendant, notwithstanding they should find that the defendant in good faith delivered to Mrs. Looney the money, if they should also find that she was at the time in fact incapable of managing her affairs, although the defendant did not know it, if the jury should believe that he reasonably ought to have known it. No such case is stated in the complaint. In both cases conversion is charged. In both cases a known wrong is charged; not a negligent performance of an assumed duty; not such imprudence in its discharge as amounts to a constructive wrong. The defendant's attempt to meet the charge of conversion by proving a delivery of the money to Mrs. Looney was, in effect, put aside as not important. The jury were permitted to find that he ought to have known better than to draw the money, or, having drawn it, than to deliver it to her; that, if he supposed her a competent person, he wrongfully lacked the intelligence he should have possessed. It is true the court instructed the jury, at the request of the defendant, that, if he delivered the money to Mrs. Looney, he was not required to show what afterwards became of it. But the plaintiff showed that it could not be found or traced after Mrs. Looney's death, and thereupon the jury were permitted to infer that it was lost because of defendant's delivery of it to her. It is well settled that no judgment can be given in favor of the plaintiff on grounds not stated in his complaint. The plaintiff must recover upon the cause of action he states or not at all. Reed v. McConnell, 133 N. Y. 425, 31 N. E. 22; Truesdell v. Sarles, 104 N. Y. 164, 10 N. E. 139; King v. MacKellar, 94 N. Y. 317. It is true that a variance between the allegations and the proofs is not material, unless it actually misleads the adverse party to his prejudice; but, where the allega-

tion is unproved in its entire scope and meaning, it is not a case of variance, but of failure of proof. Code, §§ 539, 541. It may be conceded that if the defendant retained the custody of the money with an honest intent to protect Mrs. Looney, and afterwards refused to deliver it to her representative, that the variance between the charge in the complaint and proof to such effect would not be fatal. But such a variance is not before us. It is not found that he kept the money or converted it, and this is the gravamen of the complaint.

Whether the decedent was incapable of managing her affairs was sharply contested upon the trial. The evidence might justify the jury in finding her insane, and not justify the finding that the defendant knew it or believed it. When he dealt with her, he dealt upon his own judgment and acted upon appearances. She was under no judicially declared disability, and it is a hard rule, in a close case, that permits a subsequent verdict to overreach the presumption of sanity, and therefore to impute to the defendant, as a wrong, constructive knowledge of a fact which remains unknown until the jury subsequently declares it. Insurance Co. v. Hunt, 79 N. Y. 541. We do not say that such a case may not exist, but we do say that, when the plaintiff relies upon such a case, he should state it in his complaint, and not a substantially different case. Here the charge is of fraudulent conversion, the defendant the more readily accomplishing it because his victim was an incompetent person. The recovery against him was permitted because the jury were required to find no more than that the money was lost because the defendant was a good-natured, intermeddling assistant of a feeble old woman whom he negligently assumed to be competent, when, if he had been as wise and careful as he reasonably might and should have been, he would have known better. In other words, that the defendant is adjudged liable because of the consequential loss resulting from his kindly-intended, but unfortunate, assistance; and this, under a charge of intentional active wrong. Under the charge of being a knave, he cannot be convicted of being a fool.

The defendant also insists that the plaintiff has not the right to maintain this action. The complaint alleges that "letters of administration upon the goods, chattels, and credits of said Julia Looney, deceased, were duly issued and granted by the surrogate of Rensselaer county" to the plaintiff. The answer denies knowledge or information sufficient to form a belief respecting such allegation. The evidence is the production of the letters of administration, with the recital: "They are in the usual form of limited letters of administration provided for in section 2664 of the Code of Civil Procedure, under which provision they were issued." Section 2664 provides: "But where a right of action is granted to an executor or administrator by special provision of law, if it appears to be impracticable to give a bond sufficient to cover the probable amount to be recovered, the surrogate may in his discretion accept modified security and issue letters limited to the prosecution of such action." It is obvious that the allegation of the complaint

is not sustained by the evidence. The allegation is of unrestricted letters, or, at least, is broad enough to permit evidence of such letters. The proof is of letters limited to the prosecution of a right of action granted to an executor or administrator by special provision of law. This action is not of this character, and therefore the plaintiff's right to maintain it, although alleged, is not shown. We are cited to Martin v. Railroad Co., 92 N. Y. 70, which arose before the enactment of this provision of section 2664 of the Code above quoted. It was there held that the surrogate, under the authority given him by the Revised Statutes to grant letters testamentary and of administration, and to direct and control and settle the accounts of administrators, had power to issue letters of administration limited to authority to prosecute. It was conceded, however, that the surrogate's authority and jurisdiction must be found in the statute. We now find in the provision of section 2664 his authority to issue limited letters, and the case is specified in which he can do so, and to what extent the limitation may exist. His authority to issue general letters, given by statute, is supplemented by a specification of his authority to issue limited letters, and what the limitation shall be. As the whole authority is statutory, and the case is provided for, we cannot extend the provision, or infer, as in Martin v. Railroad Co., supra, that the greater power included every form of the less. It follows that the authority alleged in the complaint to bring this action was not proved.

Judgment and order reversed, new trial granted, costs to abide the event. All concur.