(74 Misc. Rep. 1.)

## In re CARTER.

(Surrogate's Court, New York County.    October, 1911.)

EXECUTORS AND ADMINISTRATORS (§ 17*)—APPOINTMENT—PROCEEDINGS.

Where, pursuant to a citation, a widow produces in Surrogate's Court the purported will of her deceased husband, and neglects to proceed with its probate, though she is the sole beneficiary, and a sister of decedent as sole next of kin petitions for letters of administration, the surrogate may stay the proceeding and give the widow an opportunity to take out a citation for probate of the will, and, in case she fails to do so within 20 days, may grant letters of general administration to the sister.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 43–59;  Dec. Dig. § 17.*]

Application for letters of administration on the estate of Edward Carter, deceased.    Decree entered.

Sidney J. Cowen, for petitioner.
King & Booth, contra, and for a stay.

FOWLER, S.    This matter comes before the surrogate upon a petition by a sister of the deceased, as sole next of kin, for letters of administration to herself.    A citation has been issued directed to the widow of the deceased.    The only persons interested in the estate of the deceased, if he died intestate, are his widow and his sister, and both are before the surrogate.    The petitioner alleges that the deceased "left no valid will."    Some such averment was necessary in order to show prima facie a case for the exercise of the surrogate's jurisdiction to grant letters of administration.    Code Civ. Proc. § 2662;  Matter of Cameron, 47 App. Div. 120, 62 N. Y. Supp. 187; affirmed 166 N. Y. 610, 59 N. E. 1120.    Upon the return of the citation mentioned, it sufficiently appears, both by answer and by a concurrent application of the widow for a stay of proceedings to administer, that there is in existence a paper writing purporting to be a last will and testament of the said Edward Carter, deceased, and that such testamentary paper has been produced by the widow, pursuant to a prior citation issued out of this court, at the instance of the sister of the deceased.    But it also appears that no proceedings to probate this paper have since been taken by the widow, who would be the sole beneficiary thereunder if such paper be probated.    The sister would be excluded by the will, if probated, from any share in the estate.

Incidentally the sister now repudiates the action of her former attorney who appeared in the proceeding which led to the discovery and production of the said testamentary paper, and she desires not to be estopped by such proceeding from claiming that the said instrument so produced, at her instance, is not the last will and testament of the said Edward Carter, deceased.    If the sister is to maintain at the proper time the allegation that the paper so produced is not the will of the deceased, she cannot now go forward with a petition

for its probate, and this she pleads. On the other hand, the widow wholly neglects to proceed with the probate of the paper so produced. Thus there is no one acting affirmatively toward a probate. It has been held that a probate cannot be decreed in a proceeding for an administration. Matter of Gould's Will, 9 N. Y. Supp. 605;[1] Matter of Taggard, 16 N. Y. Supp. 629.[2] So an independent proceeding to probate is jurisdictional. It is also the general opinion that the surrogate cannot of his own motion, even under the circumstances denoted, initiate any original process looking to the exercise of a probate jurisdiction over the paper purporting to be the last will of the deceased. Without probate a testamentary paper has no such existence as absolutely defeats an application for a limited administration. Bond v. Graham, 1 Hare, 482, 484; Price v. Dewhurst, 4 Mylne & Cr. 76, 80, 81; Logan v. Fairlie, 2 Sim. & Stu. 284.

What ought the surrogate now to do under the circumstances? If the surrogate can initiate no proceeding looking to the probate of a testamentary paper although it is in his very custody, as it were, his jurisdiction has certainly grown very defective. But upon this point I will not now pass.

I proceed to the consideration of the merits of the application for an administration. That the deceased cannot rightly be sworn in this court to die intestate, when it appears that he left a testamentary paper purporting to be his will, I have no doubt. In a similar case a great probate judge of England, Sir John Nicholl, stated there could rightly be no sworn allegation of intestacy, where there was an allegation of a will, and he held that a plenary administration was impossible under such circumstances. In the Goods of Sir Theophilus John Metcalfe, 1 Add. Ecc. 343.

That the surrogate may stay proceedings for administration when a will is alleged is tolerably clear from domestic precedents. In Isham v. Gibbons, 1 Bradf. Sur. 69, 71, Surrogate Bradford stayed an application for letters of administration where a will was alleged, but in order to afford an opportunity for ancillary probate in this jurisdiction. In 1887, in the Estate of Henry Kimmel, Deceased, on an application for letters of administration where there was an allegation of a will, Surrogate Rollins held that, if the beneficiary declined to propound the will, he would permit the petitioner to inquire into this matter in the same proceeding, and, if it was discovered that the deceased left no will, letters would issue. In 1888, in the Estate of Philip Schuster, it appeared by the answer of the respondent, in opposition to an application for an administration, that there was a will on file in this court, and also that the petitioner for administration had filed a petition for probate, but taken out no citation thereon. Surrogate Ransom, under the circumstances, said:

"This application for letters of administration may be disposed of in either of two ways—by denying the motion on the ground that there is a will,

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 56 Hun, 643.

[2] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 62 Hun, 618.

or by suspending this proceeding in order to give the petitioner an opportunity to compel the probate thereof. I have decided to adopt the latter course. Let an order be presented accordingly."

In 1903, in the Estate of John Jones, my immediate predecessor, Surrogate Thomas, under similar circumstances, held as follows:

"The right of the petitioner to have a legal representative of the decedent appointed to represent him in the pending litigation, in the Supreme Court, is not seriously disputed. The paper on file in this court purporting to be a will of the decedent does not prove itself, and can only be established as a will in a proceeding for that purpose and on competent proof of its due execution. Matter of Cameron, 47 App. Div. 120, 62 N. Y. Supp. 187; affirmed 166 N. Y. 610, 59 N. E. 1120. The petitioner does not admit the validity of the paper, and I cannot require him to become the moving party in a proceeding to refute his own contentions relative to it. Letters of administration will issue to the petitioner, or his nominee, at the expiration of 20 days from the date of the order to be made on this memorandum, unless proceedings for the probate of said paper shall be commenced and a citation therein issued and served on the petitioner herein within that time. The amount of the bond, in case letters of administration are issued, will be fixed at $250."

The administration was to be general and not limited under this decision of Surrogate Thomas.

A stay of the proceeding for administration until the will be offered for probate is not sufficient relief to the petitioner in this matter, for the widow may never proceed to probate, and in that event the petitioner would suffer unjustly. Recognizing this fact, the surrogates have in other cases granted other relief in the alternative, which I shall now consider.

It has since the decision of the Appellate Division in Kirwin v. Malone, 45 App. Div. 93, 61 N. Y. Supp. 844, become the custom of this court, where there is an application for administration, and an allegation of a will made, either to stay the proceedings upon the application to administer or else to grant a plenary administration, and I do not feel at liberty to depart from such precedents in this cause, although I should otherwise much prefer to grant a limited administration in conformity with the earlier practice. It seems to me that a plenary administration is hardly proper where there is an allegation of a will and only a mere neglect to proceed on it, and that the decree in such a case should be for a limited administration, or one until the alleged or presumptive will is presented for probate, as was the practice in the earlier probate jurisdictions of New York. A plenary administration may result in harm in certain contingencies.

It is now generally assumed by many excellent practitioners in this court that the surrogate can grant a limited administration only in the single case provided by the statute. Code Civ. Proc. § 2664. Can it be that the power to grant and revoke plenary administration vested in the surrogate (Code Civ. Proc. § 2472) precludes the surrogate from the exercise of the power to grant a lesser or limited administration, according to the long established precedents in the courts whose jurisdiction has now devolved on the surrogates? Has the surrogate's power in this respect become less than that of his predecessors in this state under similar grants of jurisdiction? Were I to

have exclusive reference to the opinion of the Court of Appeals in a well-considered case, I should decline to think so. In Martin v. Dry Dock, E. B. & B. R. R. Co., 92 N. Y. 70, 74, that eminent court discusses generally the power of the surrogate to issue qualified or limited letters of administration, and states:

"In all matters relating to estates the court proceeds in accordance with established usage as modified by statutory enactment. In the English practice letters of administration are granted, limited to certain effects of the deceased, while the general administration is committed to another. Also administration is sometimes granted in reference to a particular fund and to defend proceedings in chancery. * * * We think it rests with him (the surrogate) to say, in the exercise of his discretion, what powers should be conferred on an administrator, and, so long as he does not exceed the authority vested in him by law, there is no valid ground for assuming that the letters issued by him are unauthorized."

Since this decision there has, however, been an adjudication of the Appellate Division for the Third Department which for reasons there expressed takes a more restricted view of the surrogates' power at present to decree a limited administration, and to this decision I, of course, must defer. Kirwin v. Malone, 45 App. Div. 93, 61 N. Y. Supp. 844. And see Estate of Mallon, 13 N. Y. Civ. Pr. Rep. 205. I should have preferred to follow the opinion of the Court of Appeals in the earlier decision first cited, as it seems to me to take a more comprehensive and accurate view of that old jurisdiction over intestate estates which was intended to be vested in the modern surrogates.

I conceive it to have been stated by the Court of Appeals, in substance, in the case of Martin, that the general grant of probate jurisdiction and jurisdiction over the estates of intestates is to be taken with reference to established "usage." In this phrase the Court of Appeals had reference to the usage established in the earlier probate jurisdictions of this state, now transferred to the existing surrogates. The jurisdiction of the former courts of probate of New York was well defined, and within its proper sphere it was binding and authoritative on all other courts. Herst v. Beach, 5 Madd. 351. As far as such jurisdiction over administrations and probates went, it was a recognized, a complete, and an efficient jurisdiction of great antiquity, with features fully understood. I should have thought the present probate and administrative jurisdictions none the less extensive within the scope which is clearly granted by statute, had it not been for the decision of the Appellate Division in Kirwin v. Malone.

A probate jurisdiction and a jurisdiction over intestates' estates are of long and uninterrupted continuance in New York, and while the very existence and the jurisdiction of the present surrogates are now due wholly to the statutes of the sovereign authority, which they represent, and which creates them, the surrogates' exercise of the jurisdiction thus conferred is to be construed with reference to the prior practice and usage, except where it is specifically limited or prescribed by statute to the contrary. Indeed, the statutes conferring the present jurisdictions are themselves often meaningless without reference to precedent and to the anterior practice and procedure of like

courts established in New York. Section 2472 of the Code of Civil Procedure, prescribing in part the jurisdiction of the surrogate, is empty sound without some reference to precedent and to former jurisdictions of a like character. Try as we may, we cannot divorce present judicial institutions from the past institutions which preceded them. To so try is futile. This is an ancient commonwealth possessed of long established jurisdictions which are inseparably associated with those now existing.

Prior to the Revised Statutes, the probate jurisdictions of New York proceeded as near as might be to the practice and the procedure of the ecclesiastical courts of England, in so far as that practice and procedure were established before the independence of New York. Goodrich v. Pendleton, 4 Johns. Ch. 549, 552; Vanderheyden v. Reid, 1 Hopk. Ch. 408, 411; reversed, 5 Cow. 719; Bogardus v. Clarke, 1 Edw. Ch. 266, 267; Id., 4 Paige, 623. While the present surrogates have only such jurisdiction as is conferred by statutes, they have in addition such incidental powers as are necessary to the exercise of the jurisdiction thus conferred. Matter of Camp, 126 N. Y. 390, 27 N. E. 799; Matter of Runk, 200 N. Y. 447, 456, 94 N. E. 363.

In the exercise of these incidental powers a surrogate cannot proceed upon some novel theory of his own, but must always have reference to established usage and precedent, as was authoritatively said in the case before cited (Martin v. Dry Dock, E. B. & B. R. R. Co., 92 N. Y. 74), where the court refers to the practice of former probate and administrative jurisdictions as explanatory of the incidental powers arising under a general grant of jurisdiction to the surrogates. This is always the rule in similar instances. When the Supreme Court of New York was first vested with the common-law jurisdictions of the Courts of King's Bench, Common Pleas and Exchequer, which even now in the final analysis define its common-law jurisdiction, reference was always had to the practice of the exemplars in order to determine the incidental powers of the Supreme Court or its justices. So it once was with the equitable jurisdiction of the Court of Chancery of this state. If we look back to the exercise of the probate and the administrative jurisdictions, now vested in the surrogates, we shall find that the present jurisdiction to grant and revoke letters of administration is not a novelty to be exploited by the surrogates themselves, but that it has a definite relation to the former practice in the jurisdictions of a like nature, long established in New York. When the statutes of the state are silent or incomplete concerning the exercise of a grant of jurisdiction, we have recourse to the exemplar of the borrowed jurisdiction in order to determine how the grant of power is to be exercised. This has been the course for several hundred years in New York, and it is that course now prescribed and made necessary by the general constitutional definition of the fundamental law of the state. But I will not enter on such indisputable and familiar ground.

It is true that the surrogates' present jurisdiction is primarily dependent on the statute of this state, but, when the statute grants in

general terms a known jurisdiction to the surrogate to issue and re-
voke letters of administration (Code Civ. Proc. § 2472), it means to
issue them in accordance with the practice and usage prescribed by
the statute or, in its absence by the fundamental law of the state.
To determine what that fundamental law is, we must first refer to
the precedents, formerly binding in the probate jurisdictions of this
state. This was the course obviously in the minds of the court in
Martin v. Dry Dock, E. B. & B. R. R. Co., 92 N. Y. 74, where I
think I find clearly expressed adumbrations of the doctrine which
I believe to be the true one.

If the surrogate has no longer the power to issue limited letters of
administration in this cause, it is because it has been, as I conceive,
taken away by mere construction of a very inconclusive statute. This
result is, to say the least, unfortunate. The contentious and admin-
istrative business of the Surrogates' Court of this county is in volume
greater than that of any other similar court, perhaps, in the world.
This court, for the convenience of the people who are compelled to
resort to it, needs the usual probate and administrative jurisdictions
in full. To deprive it of them unnecessarily when once granted is
only to hamper the public. But in consequence of this deprivation,
no matter how it occurred, I find it has since the decision referred to
from sheer necessity become the practice to issue as of course to ap-
plicants therefor limited letters of administration in cases perhaps ex-
cluded by the decision referred to; but to so issue them with the
unofficial statement that such letters are at the risk of the applicant.
Such a situation seems to me to be intolerable. Either the surrogate
has or he has not the same power to grant limited administration
which probate judges in our system have always exercised under
similar grants of jurisdiction to issue and revoke letters of adminis-
tration. I should not have thought, if it were an original question,
that so fundamental a grant to the surrogates as a court of probate
and administration was intended to be restricted by an obscure pro-
vision contained in an amendment to the Code (Code Civ. Proc. §
2664), as such amendment was after all only declaratory of a pre-
existing power of the surrogates (Martin v. Dry Dock, E. B. & B.
R. R. Co., 92 N. Y. 70), and I do not find any other possible limita-
tion on the surrogate's jurisdiction to grant and revoke limited letters
of administration in conformity with the prior practice.

Before proceeding to a conclusion, let us verify for a moment what
has been stated regarding the extent of the former jurisdiction of
the courts of probate in this state, at a time when their jurisdictions,
practice, and procedure were modeled on that of the ecclesiastical
courts, for we shall find that a power to grant limited administration
was then involved in the jurisdiction to issue letters of plenary ad-
ministration. One was a mere modification of the other to meet the
necessities of those who resorted to such courts for authority, relief,
or assistance in their affairs. Jurisdiction is never for the benefit of
the court, but always for the benefit of the litigant. At common law
it was once considered uncertain whether a court of probate could
grant an administration pendente lite except in cases of intestacy.

But the case of Walker v. Woolaton, decided by the King's Bench in 1731, settled that the ecclesiastical judge has the power to grant administration pendente lite as well touching an executorship as the rights to administration. Maskeline v. Harrison, 2 Ler. 258; 1 Williams, Executors (2d Ed.) 349. So, where a will was in India, administration was granted, limited to protect and manage the property of a deceased, until his will could be forwarded, all parties consenting. Howell v. Metcalfe, 2 Add. 348; In the Goods of Sir Thomas Casement, Prerog. Ct. Dec. 12, 1884. So, again, where a will was lost and the contents unknown, a court of probate, under its general power to administer estates and to issue letters of administration, could grant administration until the original will should be found and brought into the registry. In the Goods of Campbell, 2 Hagg. 555. There are numerous other precedents which establish that the former courts of probate of this state could grant limited administration in accordance with the practice of the ecclesiastical courts. Such is the "usage" which, I take it, the Court of Appeals referred to in Martin v. Dry Dock, E. B. & B. R. R. Co., supra.

For the reasons indicated, I should have been of the opinion that the surrogate could have granted a limited administration in this cause until the will of Edward Carter was brought to probate. But I am constrained to the contrary by the decision mentioned: "Sententia quæ tutissima videbatur, vicit." I am never disposed for one moment to depart from the orderly administration of justice and to substitute my own conceptions thereof for those of my superiors. I will assume that I cannot grant a limited administration in this proceeding, as stated in Kirwin v. Malone.

But the applicant is entitled to some relief in this proceeding. Therefore, unless the widow takes out citation on the will filed within 20 days, I shall reluctantly grant the application for letters of general administration, in accordance with the later practice in this court since the decision in Kirwin v. Malone. But in so doing I shall not ignore the widow's higher right to so administer if she invoke it. If the widow elect to administer, she will, I think, have thereby rejected the provisions of the will in her favor, and thus she may lose the greater benefit conferred on her by the will. Letters of general administration as prayed for will, however, not issue for 20 days hereafter, so as to give the widow an opportunity to take out citation for probate. To this extent the motion for a stay is granted; otherwise it is denied.

Let the decree herein be settled before me in conformity with this opinion and on the usual notice.

Decreed accordingly.