Matter of the Application of CHARLOTTE V. BILLET for Letters of Administration upon the Estate of ·ANTHONY VICTOR BILLET, Deceased.

(Surrogate's Court, Westchester County, February, 1919.)

Trusts — testamentary, cannot be defeated by connivance.
Wills — cannot be nullified in a proceeding for administration — application for letters of administration denied — Decedent Estate Law, § 98.

> The dissolution of a testamentary trust at the will or connivance of the beneficiaries is against public·policy and will not be permitted.
>
> A holographic will and codicil thereto by which testator gave to his widow for life the greater part of his estate with remainder to his sister or her heirs was filed in the Surrogate's Court. Under section 98 of the Decedent Estate Law the widow and next of kin would each inherit one-half of the estate. *Held,* that though there was filed with the widow's petition for letters of administration, the affidavits of the subscribing witnesses wherein they attempted to show that the will on file was not executed in compliance with the statute, the application will be denied even if there was also filed the consent of decedent's sister that said letters be granted, for the reason that a will cannot be nullified by a decree in a proceeding for letters of administration.

APPLICATION for letters of administration.

Young, Seacord & Ritchie, for petitioner.

McReynolds & Hunter, for Frances Billet.

SLATER, S.   This is a proceeding brought to obtain letters of administration upon the estate of the decedent. ·The petition of Charlotte V. Billet, widow of the decedent, was filed in this court November 27, 1918, praying for letters of administration, and recites that petitioner has made diligent search and inquiry for a will of decedent and found none; that a certain paper writing discovered by your petitioner was filed in this

Surrogate's Court, Westchester County, February, 1919.   [Vol. 106.

court on November 27, 1918, but is not, your petitioner is informed and believes, a valid will of said decedent, although purporting to be such.   On November 27, 1918, a holograph will and codicil written on four separate sheets of the business paper of the firm with which decedent was connected, was filed in this court. In the first clause of the will the decedent provided for the payment of bills and funeral expenses and bequeathed to St. Patrick's Church of Galveston, $250; to his sister, Frances Billet, of Galveston, Tex., $500; to his wife, the petitioner for letters of administration, he bequeaths his household and personal effects, also all insurance and cash in bank.   He directs that all stock and bonds held at the time of his death be converted into cash and that the same be invested in certain railroad stock, and with it form a trust fund, with the interest to be paid to his wife, Charlotte V. Billet.   Upon her death the trust fund is to be dissolved and the principal paid to his sister Frances Billet *or her heirs*.   In the second clause of the will he appoints his wife and sister to administer the estate.   The will is witnessed by two witnesses, the formal attestation clause being omitted.   This will is dated September 1, 1917.   Under date of August 30, 1918, the decedent penned a codicil to the will wherein he directed his executors to invest his holdings in any investments they may decide on and form a trust fund for benefit of his wife, Charlotte V. Billet, instead of the investment stated in the will which was to be in railroad stock.   On November 5, 1918, he died childless.   On November 27, 1918, citation was issued to Allie Ressel, a niece and heir-at-law and next of kin, and to St. Patrick's Church, legatee, both of Galveston, Tex.   The sister, Frances Billet, appeared by counsel on December 13, 1918, and demanded that all notices and papers be served on her counsel.   Said Frances Billet, by counsel, on December 31, 1918, filed

an answer to the petition praying for letters of administration and objected to the statement in the petition regarding the amount of the personal property. On January 18, 1919, said Frances Billet consented that letters of administration be issued upon the estate to Charlotte V. Billet. On February 3, 1919, Charlotte V. Billet filed her affidavit in further support of her petition, annexing thereto the affidavits of the two witnesses to the will, wherein they attempt to show that the paper writing filed in this court was not properly and legally executed as required by the laws of the state of New York. These two affidavits of the two attesting witnesses are similar and are in the form of answers to questions.

The widow neglects and declines to file petition looking to the probate of the will. I cannot of my own motion initiate a process to probate the will. I have refused to issue letters of administration upon the goods, chattels and credits of said decedent. My attention has been called to *Matter of Carter,* 74 Misc. Rep. 1, as supporting the application for the issuance of letters of administration. In *Matter of Carter* the sister was the petitioner and was the sole next of kin. The only persons interested in the estate were the sister and the widow, both of full age. The will excluded the sister. The widow was before the court. She did not proceed to petition for probate. The surrogate held that unless the widow took out citation upon probate he would grant letters of administration. The widow was the only person who would lose by the nonprobate of the will. She was in court and of full age.

Surrogate Fowler says in the *Carter* case: " It has since the decision of the Appellate Division in *Kirwin* v. *Malone,* 45 App. Div. 93, become the custom of this court, where there is an application for administration, and an allegation of a will made, either to

stay the proceedings upon the application to administer, or else to grant a plenary administration.''

In *Matter of Dressel,* 102 Misc. Rep. 648, Surrogate Schulz issued letters of administration when a paper writing which purports to be a will of the decedent was on file. All the parties interested were before the court and of full age, and they were the only persons interested.

The facts in these two cases are not similar to the facts in the present case, and the law of these cases is not the law for this matter.

The will of the decedent Billet created a life estate for the widow in a fund, consisting of most of his estate of some $40,000 and more, with remainder to his sister *or her* heirs. Apparently the decedent had in mind to provide a life annuity for the wife. The wife and sister now seek to destroy the solemn paper writing of the decedent by securing letters of administration. Under section 98 of the Decedent Estate Law the widow, now aged thirty years, and the next of kin would each inherit one-half of the estate and thereby become the sole owners. I am unwilling to nullify the will of the decedent in this manner. The law of New York will not permit of a dissolution of a trust at the will or connivance of the beneficiaries of the trust, because it is against public policy. To hold otherwise will unsettle and make insecure the wishes of decedents and will fill the minds of people who have those whom they would make secure, after they personally had passed away. There may be a motive for the creation of this life estate, which I feel I must protect. I am reminded the maker of this holograph will knew the beneficiary better and was therefore more keenly interested in securing her future welfare than any other person, even herself. The only time it was not against public policy to destroy a trust was when the legislature by chapter

452 of the Laws of 1893 and chapter 417 of the Laws of 1897 permitted certain trusts to be terminated. These laws were repealed by chapters 87 and 88 of the Laws of 1903. Judge Bartlett, in *Metcalfe* v. *Union Trust Co.*, 181 N. Y. 39, voiced the public policy of the state when he said: " I cannot, however, yield assent to the doctrine that the wills of testators may be destroyed by life tenants and remaindermen, even if the trustees consent, acting under legislative sanction, on the ground that there is no one left to complain, when, in fact, the scheme of the will is ignored. It comes to this: That a testator possessed of large wealth and having several children cannot carve out trusts to meet the particular situation confronting him with the assurance that they will survive the majority of the beneficiaries if the legislature see fit to sanction their destruction. Assume the case where there are an improvident son and an extravagant and frivolous daughter; the testator, while giving to several of his children their shares of his estate absolutely, sought to perpetuate his paternal care of the improvident and extravagant by securing to them a fixed income for life by creating trusts in conformity to existing statutes. Can it be logically or legally said that a trustee, vested with the legal estate, subject to the execution of the trust, can, by legislative sanction, join with the life tenants and remaindermen and abandon the execution of the trust, the main feature of which is the care for life of those unfitted to manage their own affairs, and who presumably by the terms of the will are not permitted to alienate or dispose of the income of the trust? "

If it is now against public policy, as it was previously, to destroy a trust, it is equally against public policy to assist in repudiating a will of a decedent which creates a life estate or trust and provides for the yearly care of a wife from the estate in this indirect

Surrogate's Court, Westchester County, February, 1919.    [Vol. 106.

and collateral way. *Matter of Bloodgood,* 184 App. Div. 798.

I have refused to take the testimony of the subscribing witnesses to the will in the proceedings for letters of administration. A probate cannot be decreed in a proceeding for an administration. *Matter of Gould,* 9 N. Y. Supp. 605; *Matter of Taggard,* 16 id. 629. The reverse should be true, that a will cannot be nullified by a decree in a proceeding for administration, by employing the agency provided by the law for the execution of wills to defeat the clear intent of the decedent.

*Matter of Carter* and *Matter of Dressel* only establish the procedure of issuance of letters when there is a will on file, in cases where all the parties interested are of full age and are before the court.

In the present case I am asked to void a trust and the rights of persons who will ultimately take the estate as heirs of the sister. I am asked to disrupt a trust, creating a life estate and providing a life income to a wife, in order to permit her to take the fee.

I do not know of any law which permits this to be done in this manner. The will may be insufficiently executed but that information should come before the surrogate in a proceeding had for the probate of the will. The witnesses should be subjected to examination, so that the mind of the surrogate may be satisfied for or against the probate. The establishment of a substantial compliance with the statute is sufficient in a holograph will. The rule as to the manner and method of publication of wills is not so close and severe with respect to holograph wills as where a will is drawn by an attorney. *Matter of Marley,* 140 App. Div. 823; *Matter of Akers,* 74 id. 461.

Application for letters of administration denied.

Application denied.