OPINION OF THE COURT
Millard L. Midonick, S.
This is an application for letters of administration under SCPA 1001 (subd 9) which authorizes the issuance of letters of administration "in any case in which a paper writing purporting to be a will has been filed in the court and proceedings for its probate have not been instituted within a reasonable time or have not been diligently prosecuted.” The grant of letters of administration, of course, normally entails the underlying determination that the decedent died intestate with the result that the estate passes to the distributees in accordance with the rules governing intestate succession under EPTL article 4. SCPA 1001 (subd 9) covers an area of estates practice which has not been much discussed in the modern cases; nor has the interpretation and effect of the statute been the subject of a close judicial scrutiny in written opinions. Furthermore, the commentators are not clear with regard to the actual practice in this county. (See Goldman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 1001, p 6; 10A Cox-Arenson-Medina, NY Civ Prac, pars 1001.06 [4], 1001.70; 2 Warren’s Heaton, Surrogates’ Courts, § 150, par 1 [g].) The thrust of the commentators is that the issuance of letters of administration in cases where a purported testamentary document has been submitted to the court is confined to instances where the validity of the putative will is doubtful, typically because of apparent noncompliance with the requisite formalities of execution, or extends at most to situations of a concededly ineffective testamentary instrument, such as the case where all legacies have lapsed.
*955 Long before the existence of any statutory provision therefor it was established that letters of administration would be granted despite the existence of an apparent testamentary document where the will appeared to be invalidly executed or to have been revoked. (Matter of Cameron, 47 App Div 120, affd on opn below 166 NY 610; Matter of Billet, 187 App Div 309; Matter of Rinder, 196 Misc 657; Matter of Dressel, 102 Misc 648; Matter of Carter, 74 Misc 1.) In 1956 Surrogate Bennett held in Matter of Millar (156 NYS2d 944), that letters of administration could issue where the will, although apparently valid, was an ineffectual testamentary instrument because all of the legacies had lapsed. By its plain meaning, the language of SCPA 1001 (subd 9), which was added as part of the general revision in 1966 (L 1966, ch 953, as amd by L 1967, ch 685, § 45) does not confine the issuance of letters of administration to the case of an invalid will, but provides that letters may be granted where probate proceedings "have not been instituted within a reasonable time or have not been diligently prosecuted.” The Revisers’ Notes (McKinney’s Cons Laws of NY, Book 58A, SCPA 1001, p 11) say: "Subdivision 9 is new and codifies In re Cameron’s Estate * * * [supra], and other cases holding that letters of administration may issue, even though a will be on file, if proceedings for its probate are not instituted or diligently prosecuted.” The Cameron (47 App Div 120, supra) case does turn on the will’s invalidity but the revisers’ reference to "other cases” and the absence of any mention of invalidity in their notes, as in the statute, supports the conclusion that the issuance of letters is not confined to cases where the validity of the will is doubtful.
There is language in Matter of Wedemeyer (253 App Div 766) that "the surrogate was without power to issue letters of administration where it appeared that the deceased died testate, in the absence of proof that the will was invalid.”, but this must be read against the facts in that case which were that a probate contest was currently pending in another jurisdiction.
Until the statutory revision in 1966, a petition for letters of administration was required to state that the decedent left no will. (Surrogate’s Ct Act, § 119, subd 1.) This requirement was construed to mean no valid will. (Matter of Cameron, 47 App Div 120, supra; Matter of Billet, 187 App Div 309, supra; Matter of Rinder, 196 Misc 657, supra.) The meaning of *956 "valid”, however, was expanded in certain cases, where the court found the circumstances warranted the issuance of letters, to include any will which had not been admitted to probate. (Matter of Friedman, 164 Misc 440; Matter of Sielcken, 162 Misc 54, 68; cf. Matter of Pearle, 92 NYS2d 319.) These cases are a part of the practice which SCPA 1001 (subd 9) should be read as codifying. The present statute, SCPA 1002 (subd 2), permits the petition for letters of administration to allege either that the decedent left no will "or that the case is within 1001, subdivision 9”.
Most of the judicial rulings in this area are not reported, which perhaps explains the disparity between the practice and the discussion in the texts. There are several recent decisions dealing with one type of situation in which letters of administration are quite properly granted despite the submission of an apparently valid will; these are all cases like Matter of Millar (156 NYS2d 944, supra), where the will was an ineffective document because all of the legacies had lapsed and the named executor had either died or was unwilling to function. (Matter of Dooley, NYLJ, Aug. 24, 1970, p 10, col 5; Matter of Utroff, NYLJ, July 30, 1970, p 11, col 4; Matter of Hill, NYLJ, June 21, 1968, p 16, col 6; Matter of Lerner, NYLJ, April 26, 1968, p 16, col 8; Matter of Regan, NYLJ, April 26, 1968, p 16, col 8.)
But it has long been the practice of this court to grant letters of administration in certain cases even where the will is not apparently invalid or ineffectual, where no application for probate is made. (Accord in other counties, e.g., Matter of Friedman, 164 Misc 440; Matter of Durkee, NYLJ, Sept. 24, 1970, p 18, col 7.) All of the persons interested in the putative will are, of course, made parties to the proceeding. Often these are cases where the estate is small and distribution is the same in intestacy as it would be under the will but the parties prefer the former procedure: Thus in the estate of Evelyn Mary Von Ripper, the decedent’s sister, who is also her sole distributee, seeks letters of administration despite the existence of a seemingly valid will leaving the entire estate to her outright. Both of the nominated executors have renounced appointment. The estate is alleged to have a value of $16,000. In the estate of Oswald Caravano, valued at $40,000, the decedent’s daughter petitions for letters of administration. She is his sole distributee and also the sole beneficiary under a so-called joint will executed by her father and his predeceased *957 wife. This will makes no provision for the appointment of an executor upon the death of the survivor of the testators. In the estate of Jeanne Riley, the putative will bequeaths the entire estate, here the proceeds of a cause of action for pain and suffering arising out of an accident which caused the deaths of the decedent and her husband, to the husband who survived his wife by three days. The sole beneficiaries under his will, which was admitted to probate in this court, are their two adult sons. One of the sons is the administrator c.t.a. of the father’s estate and seeks letters of administration in the mother’s estate with the consent of the other son. The husband’s estate and the two sons are the wife’s sole distributees. Here the witnesses are not New York residents or family acquaintances, and it is anticipated that it might be difficult to locate them. Clearly the actual recipients of Mrs. Riley’s estate are the same whether it passes via intestacy or under the will.
But even where distribution in intestacy diverges from that directed by the will, this court will grant letters of administration where all of the legatees are competent adults and either consent, appear but do not object, or default, where the court is satisfied that no useful purpose would be served by requiring a probate proceeding: Thus, in the estate of Umberto A. Iacono, the putative will gives the entire $5,000 estate to the decedent’s sister Mary who petitions for letters of administration. If the estate is distributed in accordance with the laws governing intestacy, she will share it with four other distributees. The court is satisfied that she understands the consequences of not propounding the will and sees no reason to preclude such a choice. When the petitioner requests the denial of probate in addition to the issuance of letters of administration, this request will be granted (see, e.g., Matter of Young, NYLJ, July 25, 1978, p 14, col 5).
The rationale for this practice is consistent with that embodied in the statutes and case law permitting testamentary beneficiaries to renounce or disclaim their gifts. (See, e.g., EPTL 3-3.10; 2-1.11.) New York law permitted a legatee to renounce a legacy long before there was statutory provision therefor. Before the statute, renunciation could be a very informal matter requiring no special form; it could be written or oral or established by the legatee’s conduct. (Third Report of Temporary State Comm. on Modernization, Revision and Simplification of Law of Estates, March 31, 1964, pp 240, 254, *958 260.) Thus, when the persons who would benefit under the will fail to object to the issuance of letters of administration, this court can regard their conduct as a clear indication of an intent to refuse the testamentary gift, i.e., a renunciation or disclaimer. The explicit statutory procedure for renunciation of testamentary dispositions is by its terms only applicable to wills which have been admitted to probate (EPTL 3-3.10, subd [a]; 2-1.11, subd [a], par [2]; 2-1.11, subd [b])- However, the statutes clearly do not pre-empt the entire area of renunciation since they preserve the common-law right to renounce. (EPTL 3-3.10, subd [g]; 2-1.11, subd [h].) Thus, EPTL 2-1.11 (subd [h]) provides: "This section shall not abridge the right of any beneficiary or any other person to assign, convey, release or renounce any property or interest therein arising under any other section of this chapter or other statute or under common law.”
Decrees have been signed in the estates of Evelyn Mary Von Ripper, Oswald Caravano, Jeanne Riley and Umberto A. Iacono, granting the applications for letters of administration under SCPA 1001 (subd 9).
The estate of Jean Brugaletta, however, requires the exercise of the court’s discretion in a different manner. In this case it is the public administrator who asks that letters of administration be issued to him under SCPA 1001 (subd 9). The sole surviving beneficiary under the will attached to the petition is the decedent’s uncle, Jerome G. Stahl. Mr. Stahl is a person under a disability for whom co-conservators were appointed and on whose behalf a guardian ad litem appears in this proceeding. Although Mr. Stahl is not a distributee of the decedent, the guardian reports that neither he nor the co-conservators object to the grant of letters of administration. Clearly, the conservators are not interested in offering the will for probate. The reason for their position is, presumably, the supposed insolvency of the estate. The guardian reports that the estate assets have a value of $10,460 against which the Department of Social Services has a claim of $9,161, and there is a $1,121 funeral bill outstanding.
The public administrator proposes that he be granted letters of administration without prejudice to Mr. Stahl’s ultimate right to assert the validity of the will on the administrator’s accounting. In this case then the grant of letters is not the equivalent of a denial of probate. The public administrator will make Mr. Stahl a party to any accounting as the benefici *959 ary under the putative will, together with the decedent’s distributees. The guardian has agreed to this procedure which facilitates the administration of this estate and leaves the ultimate burden of going forward with the probate of this 1958 will (including the location of the witnesses) where that burden properly belongs — on the interested parties.
Some of the earliest cases authorizing the issuance of letters of administration despite the existence of a testamentary instrument rest on the then lack of power in this court to compel the institution of probate proceedings if none of the interested parties was willing to go forward. Matter of Carter (74 Misc 1), a leading case in this county, turns on this point. (Matter of Dressel102 Misc 648; but cf. Matter of Sielcken, 162 Misc 54, 68 which was decided after the change in the law.) But this court has had the power to direct the public administrator to bring on probate proceedings since 1921. (L 1921, ch 201.) Despite the existence of power in this court to direct the institution of a probate proceeding, that power is not exercised where, in the court’s judgment, there is no useful purpose to having the will admitted to probate, or as in the Brugaletta estate, the question of whether there is any purpose in probate is better deferred to the public administrator’s accounting. The allowance of the guardian ad litem has been fixed in the Brugaletta estate and the decree to be submitted therein will direct the joinder of Mr. Stahl on the administrator’s accounting.